**UNITED STATES DISTRICT COURT**              **EASTERN DISTRICT OF TEXAS**

| | | |
|---|---|---|
| **LINDA ROBERTS and ELIZABETH ESPREE, on behalf of themselves and all others similarly situated,** | § § § § | |
| *Plaintiff*, | § § | **CIVIL ACTION** |
| **v.** | § § | **CASE NO. 1:20-cv-92-MC** |
| **BAPTIST HEALTHCARE SYSTEM, LLC, BAPTIST HOSPITALS OF SOUTHEAST TEXAS, and BAPTIST BEHAVIORAL HEALTH CENTER** | § § § § § | **JURY TRIAL DEMANDED** |
| *Defendants*. | § | |

## PLAINTIFFS' MOTION FOR CLASS CERTIFICATION PURSUANT TO FED. R. CIV. P. 23

**TABLE OF CONTENTS**

I.    INTRODUCTION……………………………………………………………………………1

II.   FACTUAL BACKGROUND…………………………………………………………………2

    A.   Defendants Control the Facility Where Plaintiffs and Putative Class Members Work, Including the Policies and Practices that Apply to RNs and Psych Techs. .................. 2

    B.   Plaintiffs and Putative Class Members All Perform the Same Primary Patient Care Duties for Defendants.................................................................................................... 2

    C.   Plaintiffs and Putative Class Members All Work Under a Single Clinical Director and Facility Administrator. ............................................................................................ 3

    D.   Plaintiffs and Putative Class Members Share Similar Employment Settings. ............ 4

III.  RECOVERY UNDER QUANTUM MERUIT AND UNJUST ENRICHMENT………… 8

    A.   Plaintiffs and Putative Class Members Plead Facts That Meet Their Prima Facie Burden for Quantum Meruit Based on Unjust Enrichment Under the Law................ 8

        1.   RNs and Psych Techs Render a Valuable Service To Defendants, Which Defendants Accept And Enjoy Without Properly Paying The RNs and Psych Techs. ....................................................................................................... 9

        2.   No Other Remedy Exists Under Texas Law. ................................................. 11

        3.   Failure to Compensate Plaintiffs and Putative Class Members for Their Free Labor Would Be an Injustice.......................................................................... 13

IV.   CERTIFICATION UNDER FEDERAL RULE OF CIVIL PROCEDURE 23…………...15

V.    ARGUMENT & AUTHORITIES………………………………………………………...17

    A.   Standard for Class Certification................................................................................ 17

    B.   This Case Meets the Criteria for Class Certification Under Rule 23(a).................... 19

        1.   The Putative Class Members Are So Numerous that Joinder Is Impossible.... 19

        2.   Questions of Law and Fact Are Common to the Class. ................................. 20

        3.   Plaintiffs' Claims Are Typical of The Class. ................................................. 24

        4.   Plaintiff Will Fairly and Adequately Protect the Interests of the Class. .......... 25

    C.   Plaintiffs' Claims Satisfy the Requirements of Rule 23(b)(3) Because Common Issues Predominate Over Individual Questions. ................................................................. 26

    D.   Courts Across the Country Routinely Certify Similar Classes................................. 29

VI.   CONCLUSION………………………………………………………………………….. 29

## I.    INTRODUCTION

Linda Roberts and Elizabeth Espree ("Plaintiffs") hereby move the Court for an order certifying their claims as a class action pursuant to Federal Rule of Civil Procedure 23. All of the requirements for Rule 23 are met. Plaintiffs, both of whom are members of the class(es) and/or subclass(es), can establish their claims in a readily manageable trial using common proof on behalf of the current and former non-exempt Registered Nurses ("RNs") and patient care workers known as Psychiatric Technicians or "Psych Techs" employed by Baptist Hospital for Southeast Texas and Baptist Behavioral Health Center ("Defendants") at the Behavioral Health Center (the "Facility") from March 4, 2016 to the resolution of this action (the "Class Period") (collectively, "Putative Class Members"). Defendants' hospital-wide policies and practices are and were uniformly applied and resulted in common detriment to the Putative Class Members, and each of the alleged wage-and-hour violations constitutes a common and predominant legal issue. Specifically, this proposed class action arises out of Defendants' systematic and improper failure to pay Plaintiffs and Putative Class Members for all hours worked, including during on-duty, unpaid meal breaks.

Plaintiffs and Putative Class Members' causes of actions are brought under quantum meruit, money had and received, and unjust enrichment state common law theories. *See* Dkt. 54, at ¶¶ 91-114. Pursuant to Federal Rule of Civil Procedure 23, Plaintiffs seek to certify the following Putative Class:

> **All current and former hourly, non-exempt registered RNs and Psych Techs employed by Defendants at the Facility at any time during the Class Period.**

All Putative Class Members are classified as non-exempt from overtime, paid on an hourly basis, perform the same primary patient care job duties, report to one Clinical Director (the salaried, exempt, highest ranking patient care employee at the Facility), work in a facility that has

one Administrator (the Facility's highest ranking officer), and work in an in-patient environment where they are subject to Defendants' common set of work policies and practices that deprived them of pay for all hours worked. As such, and for the reasons discussed below, Plaintiffs and Putative Class Members readily establish each requisite element of Rule 23(a) and 23(b)(3); therefore, certification is appropriate.

## II.    FACTUAL BACKGROUND

### A. Defendants Control the Facility Where Plaintiffs and Putative Class Members Work, Including the Policies and Practices that Apply to RNs and Psych Techs.

Defendants own and operate the Facility in Beaumont, Texas.[1] Defendants admit they employ or employed numerous RNs and Psych Techs at the Facility who they classify as non-exempt and pay on an hourly basis.[2] Defendants further admit that they uniformly apply their timekeeping, payroll, and meal break policies to Plaintiffs and Putative Class Members during their employment at the Facility.[3] In fact, the Facility has no discretion to change these policies.[4]

### B. Plaintiffs and Putative Class Members All Perform the Same Primary Patient Care Duties for Defendants.

RNs and Psych Techs all provide patient care for psychiatric patients at the Facility.[5] Specifically, RNs check in on patients (conduct patient "rounds") every thirty minutes, and Psych

---

[1] *See* Dkt. 56 (Defendants' First Amended Answer to Plaintiffs' First Amended Complaint ("FAC")).
[2] *See* Dkt. 56, FAC at ¶ 1.
[3] Ex. A, Deposition of Sally Broussard taken on Jan. 21, 2022 ("Broussard Depo."), pp. 49:1-12 (discussing automatic time deduction policy); 49:13-50:12 (discussing common time keeping system); 52:10-54:13 (discussing recording hours worked policy); 73:07-22 (discussing overtime policy); 79:20-80:10, 105:3-9 (discussing seven minute rounding policy); 88:14-90:01 (discussing meal and break periods policy); 112:8-113:05 (explaining human resources ("HR") policies are applied uniformly); Ex. N, Defendants' Responses to Plaintiffs' First Set of RFAs ("RFAs") Nos. 3, 4, 5, 7, and 8.
[4] Ex. A, Broussard Depo., pp. 41:04-42:14 (explaining HR policies may not be modified).
[5] Ex. A, Broussard Depo, at pp. 26:09-32:24; Ex. D, Job Descriptions.

Techs make their patient rounds every fifteen minutes.[6] RNs organize the patient rounds for themselves and the Psych Techs, and if there are not enough Psych Techs on shift, the RNs are required to conduct patient rounds every fifteen minutes themselves.[7] Further, as part of their patient care responsibilities the RNs and Psych Techs are required to document, or "chart," the patients' status, medications, and care provided; regularly interact with patients and their families; collaborate with doctors and other medical staff; respond to emergency situations; and are responsible for maintaining a clean and orderly environment in the patients' rooms.[8] While the Psych Techs are primarily responsible for cleaning the patients' rooms, changing patients' clothes, changing linens and sheets, organizing supplies, and facilitating meals,[9] if a Psych Tech is unavailable to perform one these tasks, an RN must step in to complete the task.[10] The RNs, however, are uniquely responsible for administering medicine to patients.[11]

### C. Plaintiffs and Putative Class Members All Work Under a Single Clinical Director and Facility Administrator.

The Clinical Director is the highest ranking patient care employee in the Facility and supervises all RNs and Psych Techs, including those in a supervisory role such as Charge Nurses, Nurse Managers, and House Supervisors.[12] The Clinical Director is the only person with authority to change or modify an RN or Psych Tech's time records.[13] Here, the Clinical Director was an

---

[6] Ex. B, Deposition of Elizabeth Espree taken on April 25, 2022 ("Espree Depo.") at p. 45:10-15 (discussing rounds every fifteen minutes for techs and rounds every thirty minutes for RNs).
[7] Ex. C, Deposition of Linda Roberts taken on May 10, 2022 ("Roberts Depo") at p. 61:07-14.
[8] Ex. D, Job Descriptions; Ex. C, Roberts Depo at pp. 44:20-25, 75:07-20; Ex. B, Espree Depo. at pp. 22:04-25, 23:08-17, 25:19-24, 44:13-14.
[9] Ex. D, Job Descriptions; Ex. C, Roberts Depo at p. 44:16-25, 47:21-48:05, 53:21-54:25; Ex. B, Espree Depo. at pp. 25:19-25, 44:13-17.
[10] Ex. D, Job Descriptions.
[11] Ex. B, Espree Depo. at p. 23:8-17, 25:06-09.
[12] Ex. A, Broussard Depo. at pp. 12:13-13:24.
[13] Ex. A, Broussard Depo. at p. 122:9-16.

individual named Miechael Eason, and the Facility Administrator (the highest ranking employee

at the Facility, to whom the Clinical Director reported) was an individual named Sally Broussard

throughout most of the Class Period.[14]

### D.  Plaintiffs and Putative Class Members Share Similar Employment Settings.

Discovery demonstrates that Plaintiffs and Putative Class Members share a similar overall

employment setting that makes them particularly appropriate for class treatment. Specifically, the

following common facts are true as to all the hourly, non-exempt RNs and Psych Techs at the

Facility:

- RNs and Psych Techs work 12-hour shifts.[15] To be considered full time, an RN's or Psych Techs must work three twelve hour shifts in a week, and RNs and Psych Techs regularly take on an extra fourth or fifth shift due to understaffing.[16]

- The Facility tracks the hours worked by all hourly-paid RNs and Psych Techs using the same time tracking system, KRONOS. Prior to KRONOS, all RNs and Psych Techs used a system called HMS to track their time.[17]

- Defendants' work break policy and practice applies equally to all hourly-paid RNs and Psych Techs.[18]

- All RNs and Psych Techs are required to complete the same orientation where they are instructed on Defendants' system-wide policies (including the work break policy).[19]

- Upon hiring, all hourly-paid RNs and Psych Techs are trained during orientation to strictly comply with detailed codes of behavior that are contained

---

[14] Ex. A, Broussard Depo. at pp.13:17-24, 22:5-18; *see* Ex. D, Job Descriptions.

[15] *Id.* at p. 48:03-07.

[16] *See* Ex. F, Deposition of Magloire Bajika taken on June 14, 2022 ("Bajika Depo") at pp. 8:16-9:23; Ex. G, Declaration of Elizabeth Espree in Support of Plaintiffs' Motion for Reconsideration ("Espree Decl.") at ¶¶ 5-7.

[17] Ex. A, Broussard Depo. at p. 50:03-12.

[18] Ex. A, Broussard Depo. at pp. 103:01-106:18.

[19] *See* Ex. A, Broussard Depo. at p. 95:01-19; Ex. H, Declaration of Linda Roberts in Support of Plaintiffs' Motion for Reconsideration ("Roberts Decl.") at ¶¶ 12-21; Ex. G, Espree Decl. at ¶¶ 8-20; Ex. I, Declaration of Magloire Bajika in Support of Plaintiffs' Motion for Reconsideration ("Bajika Decl.") at ¶¶ 25-29.

in Defendants' written policies.[20] But adhering to these policies and practices makes the RNs and Psych Techs responsible for patient care even during their meal breaks.[21]

- RNs and Psych Techs are not allowed to work overtime without the express prior approval of a manager,[22] except in the case of an "emergency." But what constitutes an "emergency" is not clearly defined or documented in the training provided to the RNs and Psych Techs.[23]

- The Facility uses an automated meal break deduction system for its non-exempt employees (including the RNs and Psych Techs) whereby 30 minutes are automatically deducted for a meal break from an employees' time records if they work at least eight consecutive hours.[24] Again, because the RNs and Psych Techs always work a 12-hour shift, this automatic meal break deduction occurs for *all* their shifts worked under this policy.[25]

---

[20] Ex. E, Jonas Depo. at pp. 122:17-125-24; Ex. C, Roberts Depo. at p. 79:20-25; Ex. C, Roberts Depo. at pp. 58:17-59:06,78:16-25; Ex. B, Espree Depo. at pp. 43:1-45:15; Ex. J, Deposition of Monique Parkerson taken on June 13, 2022 ("Parkerson Depo.") at p.17:14-18 (not able to leave premises even thought they were technically allowed to leave); Ex. F, Bajika Depo. at p. 25:02-14; Ex. K, Deposition of Marchara Thompson taken on June 13, 2022 ("Thompson Depo.") at pp. 34:05-24 and 26:05-25 ("I took an oath that I would make sure these patients are safe while I am working … **I could lose my license if something happens, and I am on the unit**."); *id.* at p. 26:05-25 ("A lot of times, we ate at the desk", even though it went against Defendants' policy).

[21] Ex. B, Espree Depo. at p. 43:1-45:15; Ex. C, Roberts Depo. at p. 22:11-21; Ex. K, Thompson Depo at p. 34:25-35:4 ("Patient safety more important to me than leaving the unit to go take a break."); Ex. J, Parkerson Depo at p. 19:10-15 (staff member, doctors, nurse interrupted).

[22] *See* Ex. D, Job Descriptions at BHSET001212; Ex. L, Baptist Hospitals of Southeast Texas' Overtime Policy ("Overtime Policy"); Ex. H, Roberts Decl. at ¶¶ 14-20, 25-26; Ex. G, Espree Decl. at ¶¶ 21-24; Ex. I, Bajika Decl. at ¶¶ 30-34; Ex. M, Authorization of Overtime Training at pp. 7, 16, and 23; Ex. C, Roberts Depo. at pp. 86:17-87:08, 87:14-19, 91:23-25; and Ex. E, Jonas Depo. at pp. 122:17-123:11.

[23] *See* Ex. D, Job Descriptions at BHSET 001212 ¶ 2 ("employees may not decide on their own to work overtime except in emergencies"); Ex. A, Broussard Depo. at p. 85:10-22 ("Q: … is it documented anywhere that, for example, training on when you are allowed to work overtime without getting pre-approval -- is it documented anywhere that that type of training took place? A. Not specifically.").

[24]*See* Ex. A, Broussard Depo. at p. 63:08-13 (automatic deduction in place since at least March 2016); Ex. D, Job Descriptions at BHSET 001206 ("Work Breaks Policy").

[25]*See* Ex. A, Broussard Depo. at p. 77:21-25, 48:3 - 49:12; *see also* Ex. A, Broussard Depo. at 12:12-15 (Administrator Broussard confirming that she has worked the Facility since 2016.)

---

- The Facility can identify each time it automatically deducted 30 minutes from each RN's or Psych Tech's pay through the KRONOS system.[26]

- The Facility institutes a common timekeeping policy of rounding the RNs' and Psych Techs' recorded work time to the nearest 15-minute increment.[27]

- The RNs' and Psych Techs' shifts theoretically start at 7am/pm and end at 7pm/am. In practice, however, the RNs and Psych Techs are instructed that their shifts starts at 6:45am/pm and ends at 7:15 pm/am.[28]

- The Facility institutes a clock-in and clock-out policy that requires RNs and Psych Techs to clock in within seven minutes of their scheduled start time, and to clock out no later than seven minutes after their scheduled end-of-day. In conjunction with Defendants' uniform rounding policy, if the RNs and Psych Techs clock in at 6:38, the system automatically rounds their time to 6:45am/pm. Likewise, if the RNs and Psych Techs clock out at 7:22, the system automatically rounds their time to 7:15am/pm.[29]

- However, in practice, Defendants instruct the RNs and Psych Techs not to clock in after 6:45, and not to remain clocked in after 7:08.[30] This requires RNs and Psych Techs to work off the clock to finish their work and comply with Defendants' policies.[31] This practice in combination with Defendants' rounding policy also ensures that the rounded time favors Defendants.

- Defendants' "7-minute rule" is not merely an encouragement to non-exempt workers like RNs and Psych Techs to work off the clock but is a rule they must follow.[32]

- Defendants recognize that the practice of requiring RNs and Psych Techs to perform unpaid, off the clock work is illegal.[33]

---

[26]*See* Ex. N, RFAs Nos. 12 (Defendants use Kronos); *see also* Ex. E, Jonas Depo. at p. 75:03-24 (30 minutes are automatically taken from each patient care workers' time because Defendants assumed they took a *bonafide* break); Ex. A, Broussard Depo. at p. 103:01-20 (automatic deduction applies at the Facility and no one has discretion not to use it).

[27] *See* Ex. A, Broussard Depo. at pp. 82:03-17, 104:14-105:13.

[28] *See* Ex. A, Broussard Depo. at pp. 47:10-48:7.

[29] *See* Ex. A, Broussard Depo. at pp. 60:03-61:06.

[30] *See* Ex. F, Bajika Depo. at pp. 22:11-25:24, Ex. I, Bajika Decl. at ¶¶ 5-9, Ex. A, Broussard Depo. at p. 48:06-25; and Ex. C, Roberts Depo. at pp. 48:4-5, 53:15-54.

[31] *See* Ex. B, Espree Depo. at p. 76:6-24; Ex. C, Roberts Depo. at pp. 47:25-48:5, 50:25-51:08.

[32] *See* Ex. A, Broussard Depo. at pp. 54:2-58:22.

[33] *See* Ex. M, Authorization of Overtime Training at pp. 22-23.139-140.

---

- Defendants know that RNs and Psych Techs routinely perform work while off the clock and during unpaid meal periods as many Putative Class Members have complained about these issues to management.[34]

- RNs and Psych Techs are subject to disciplinary action, including termination, for failure to follow Defendants' policies, rules, and/or procedures. However, Defendants also emphasize patient care as the most important priority for RNs and Psych Techs.[35]

- RNs and Psych Techs have ethical obligations to their patients that prevent them from ever being truly duty-free during meal breaks.[36]

- Defendants' written work break and automatic deduction policies merely *assume*—but do not ensure or provide—an off-duty lunch break, and therefore, these policies are unlawful under Texas law.[37]

- RNs and Psych Techs are not properly relieved during their meal breaks.[38]

In sum, Putative Class Members work in the same Facility, under the same Facility Administrator and Clinical Director, perform the same primary patient care job duties, are subject to the same policies and practices, and suffer from Defendants' common wage and hour violations that deprive them of pay for all hours worked.[39] In other words, common evidence shows Plaintiffs and Putative Class Members were subject to the same policies and practices, implemented by the

---

[34] *See* Ex. C, Roberts Depo at pp. 48:1-5, 51:2-8; Ex. B, Espree Depo. at pp. 72:11-23,76:06-22; Ex. F, Bajika Depo. at pp. 26:24-27:04, 32:03-14, 46:02-06 (off the clock work was not a courtesy, it is "what needed to be done."); Ex. H, Roberts Decl. at ¶¶ 7-11, 13, 26, 27.

[35] *See* Ex. N, RFAs No. 47; *see also* Ex. A, Broussard Depo. at pp. 37:19-38:18, 45:06-25, 46:07-47:03 (admitting that both RNs and Psych Techs owe an ethical duty to patients, that neglect or abandonment will violate that duty, and that Defendants take RNs and Psych Techs' ethical duties seriously as a matter of Hospital Policy.)

[36] *See* Ex. O, American Nurse Association's Code of Ethics for Nurses at Provisions 2 and 4 (**noting a nurse's "primary commitment is to the patient" and that RNs are "responsible and accountable for individual nursing practice"**)(emphasis added).

[37] *See* Ex. E, Jonas Depo. at pp. 75:10-15 and 111:06-116:21; *see also* Ex. A, Broussard Depo. at pp. 124:13-125:20.

[38] *See* Ex. B, Espree Depo. at p. 47: 15-23, 56:09-15; Ex. J, Parkerson Depo. at pp. 15:04-15 and 17:14-18.

[39] *Supra*, Sections II.A-D.

---

same people at the Facility throughout the Class Period. There can be no doubt that a determination based on this common evidence will resolve the issues "central to the validity of each one of the [Putative Class Member's] claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351 (2011).

### III.    RECOVERY UNDER QUANTUM MERUIT AND UNJUST ENRICHMENT

#### A.  Plaintiffs and Putative Class Members Plead Facts That Meet Their Prima Facie Burden for Quantum Meruit Based on Unjust Enrichment Under the Law.

Unjust enrichment based on quantum meruit does not provide an independent basis for a cause of action. The phrase "unjust enrichment" characterizes the result whereby one individual fails to make restitution of benefits received under circumstances giving rise to an implied or quasi-contract to repay. *Allen v. Berrey*, 645 S.W.2d 550, 553 (Tex. App. 1982, writ ref'd n.r.e.) (citing *Fun Time Centers, Inc. v. Continental National Bank of Fort Worth*, 517 S.W.2d 877 (Tex. Civ. App. 1974, writ dism'd)). "Unjust enrichment and quantum meruit are equitable, quasi contractual claims that exist when there is no express agreement." *McArdle v. Mattel*, 456 F. Supp. 2d 769, 779, fn.7 (E.D. Tex. 2006). Quantum meruit remedy is an equitable remedy based upon the promise implied by law to pay for beneficial services rendered and knowingly accepted. *Vortt Exploration Co. v. Chevron U.S.A., Inc.,* 787 S.W.2d 942, 944 (Tex. 1990).

The Fifth Circuit has held that unjust enrichment and quantum meruit are separate claims under Texas law, and has explained the distinction between the two:

> Unjust enrichment allows recovery when one person has obtained a benefit by another by fraud, duress, or the taking of an undue advantage.

> In turn, quantum meruit allows for an equitable recovery based upon the promise implied by law to pay for beneficial services rendered and knowingly accepted. If a valid contract covers services provided, the party generally cannot recover under a quantum meruit theory.

---

*Purselley v. Lockheed Martin Corp.*, 322 F. App'x 399, 403 (5th Cir. 2009) (internal citations omitted).

Recovery in quantum meruit will be had when nonpayment for the services rendered could result in an unjust enrichment to the party benefited by the work. *Vortt*, 787 S.W.2d at 944 (internal citations omitted). Thus, the Texas Supreme Court recognizes that quantum meruit is founded on the principles of unjust enrichment. *Id.* The elements of a quantum meruit claim are: 1) valuable services were rendered or materials furnished; 2) for the person sought to be charged; 3) which services and materials were accepted by the person sought to be charged, used and enjoyed by him; 4) under such circumstances as reasonable, notified the person sought to be charged that the plaintiff in performing such services was expecting to be paid by the person sought to be charged. *Bashara v. Baptist Mem'l Hosp. Sys.*, 685 S.W.2d 307, 310 (Tex. 1985) (citing *City of Ingleside v. Stewart*, 554 S.W.2d 939 (Tex. Civ. App.—Corpus Christi 1977, writ ref'd n.r.e.) (citations omitted).

Here, Plaintiffs' claims are based on quantum meruit, which is, in turn, based on the promise implied by law that requires Defendants to pay Plaintiffs and Putative Class Members for a beneficial service (their work) knowingly accepted. Quantum meruit recovery is possible for any valuable services rendered. *Infra-Pak (Dallas), Inc. v. Carlson Stapler & Shippers Supply, Inc.*, 803 F.2d 862, 865 (5th Cir. 1986).

      **1.  RNs and Psych Techs Render a Valuable Service To Defendants, Which Defendants Accept And Enjoy Without Properly Paying The RNs and Psych Techs.**

It is indisputable that Plaintiffs and Putative Class Members render valuable services—their patient care work—for the benefit of Defendants. Plaintiffs and Putative Class Members reasonably expect payment from Defendants for their valuable services. However, rather than pay RNs and Psych Techs for *all* hours worked, Defendants automatically deduct 30 minutes for a

meal period every shift of at least eight hours, regardless of whether the RNs and Psych Techs *actually* receive a *bona fide* break.[40] As outlined *supra*, common evidence shows the RNs and Psych Techs rarely, if ever, received a full, uninterrupted 30-minute meal break due to their job demands that require them to constantly remain on-duty and perform necessary patient care.[41]

To be sure, Defendants provide a mechanism, in theory, by which an RN or Psych Tech can reverse the automatic deduction. However, class-wide evidence reveals Defendants created and fostered an environment where off the clock work – such as unpaid, missed or interrupted meal breaks—was the accepted norm.[42] The same class-wide evidence also shows that the so-called time correction policy meant to compensate Plaintiffs and Putative Class Members for their missed or interrupted breaks is illusory, at best, as Defendants openly discouraged RNs and Psych Techs from seeking (and obtaining) time corrections when their meal break were missed or interrupted.[43]

Finally, there is no question that, as Defendants' employees, RNs and Psych Techs expect to be paid for all their time worked, and that, as their employer, Defendants were reasonably on notice of their employees' expectation. *See Myrex Indus., Inc. v. Ortolon,* 126 S.W.3d 548, 551 (Tex. App.—Houston [14th Dist.] 2003, pet. denied) (reasonable notice "focuses on what the recipient of the services knew or should have known **at the time the services were accepted**."

---

[40] *See* Ex. E, Jonas Depo. at p. 75:10-15.

[41] *See* Ex. C, Roberts Depo at p. 81:19-82:04; Ex. B, Espree Depo at pp. 43:01-14, 47:15-23, 56:09-15; *see also* Ex. J, Parkerson Depo at p. 24:07-15 (100% of her breaks were interrupted over four years); Ex. K, Thompson Depo at p. 33:01-02 ("it wasn't a real break" … I didn't get to eat in peace."); and Ex. I, Bajika Decl. at ¶ 24 ("Interrupted almost every time I took a break.")

[42] *See* Ex. D, Job Descriptions, Ex. A Broussard Depo. at pp. 41:6-12, 42:15-46:15, 45:6-25, 46:7-47:3, 90:17-25; Ex. O American Nurses Association Code of Ethics for Nurses (due to both the nature of the job, the ethical duties owed by RNs and Psych Techs, and due to Defendants' own policies and procedures.)

[43] *See* Ex. A, Broussard Depo at p. 66:08-19; Ex. B, Espree Depo at 68:02-18; Ex. C, Roberts Depo at pp. 86:17-87:19; Ex. F, Bajika Depo at p. 58:04:18; Ex. J, Parkerson Depo at pp. 27:19-30:09; Ex. K, Thompson Depo at pp. 47:11-15, 52:13-53:01.

(emphasis added)). Indeed, as stated *supra*, common evidence shows Defendants were well-aware RNs and Psych Techs regularly worked off the clock, and expected as much, as many Putative Class Members complained about these issues to management on repeated occasions.[44] In fact, supervisors and the Clinical Director, Miechael Eason, had actual knowledge of RN's and Psych Tech's missed breaks and off the clock work.[45]

In sum, Defendants' automatic deduction policy combined with the demands Defendants placed on the RNs and Psych Techs created a situation wherein RNs and Psych Techs were regularly working for Defendants' benefit without compensation. Put another way, Defendants' automatic deduction policy conferred an unjust enrichment upon Defendants.

### 2. No Other Remedy Exists Under Texas Law.

It is undisputable that Plaintiffs and the Putative Class Members are employed "at-will." Unjust enrichment is not available when an express contract can provide plaintiff with a recoverable cause of action. "If the work in question is covered by an express contract, there can be no recovery in quantum meruit." *Caton v. Leach Corp.*, 896 F.2d 939, 947 (5th Cir. 1990) (citations omitted). But at-will employment is not an express contract. Under the Texas Labor Code, wages are defined compensation owed by an employer for labor or services rendered by an employee, whether computed based on  time, task, piece, commission, or another legal basis. Tex. Lab. Code § 61.001(7)(A). Here, since the RNs and Psych Techs are at-will employees, there is

---

[44]*See* Ex. B, Espree Depo. at p. 50:05-13; Ex. J, Parkerson Depo. at pp. 24:07-28:02; Ex. K, Thompson Depo. at pp. 45:24-25, 47:11-15.
[45] *See* Ex. J, Parkerson Depo. at pp.  24:16-20, 26:09-18; Ex. K., Thompson Depo. at pp. 47:11-48:17; Ex. F, Bajika Depo. at pp. 60:23-61:02.

no recoverable breach of contract cause of action. But Defendants remain obligated to pay Plaintiffs and Putative Class Members for all their hours worked under equity.[46]

The Fair Labor Standards Act ("FLSA"), which provides an avenue for recovery of damages and penalties under federal law, is not an adequate remedy for the class. Specifically, the FLSA only allows employees to recover two or, at most, three years of unpaid wages based on the date they "opt-in" to a collective action by filing their written consent in accordance with 29 U.S.C. §§ 216(b), 255, and 260. Thus, for those Putative Class Members who do not, or cannot, opt-in to a collective action under 29 U.S.C. 216(b), remedies may exist under state law. Where remedies are available under state law, recovery under equitable theories is not permitted. Because Texas does not provide a remedy for wage and hour violations, an equitable remedy is Putative Class Members' only remedy available here.

Further, in the event RNs and Psych Techs join a FLSA collection action as "opt-in plaintiffs," their recovery is limited to overtime (one and one-half of their "regular" hourly rate times the hours they worked over forty in any given workweek and for which they were not paid). This is because the FLSA mandates recovery for overtime or minimum wage, nothing more. As the Fourth Circuit explained, "[a]lthough it has many provisions, the [FLSA] is best understood as the minimum wage/maximum hour law." *Tom v. Hospitality Ventures LLC*, 980 F.3d 1027, 1032 (4th Cir. 2020).

In sum, because Texas lacks any state wage and hour statutory schemes and, as at-will employees, the Putative Class Members cannot maintain a breach of contract claim, an equitable remedy under a promise implied in law is the only remedy available. And the same is true for

---

[46] The Texas Pay Day Law empowers the State to pursue violators, but they do not create a private cause of action. *See Ong Lee v. Nationstar Mortgage, LLC*, No. 3:19-CV-2185-L, 2021 U.S. Dist. LEXIS 81949 at *10-11 (N.D. Tex. Ap. 29, 2021).

Plaintiffs and any Opt-In-Plaintiffs who, under the FLSA, can only recover unpaid hours worked over forty in any given workweek, but are not protected for all unpaid hours worked below that threshold.

### 3.   Failure to Compensate Plaintiffs and Putative Class Members for Their Free Labor Would Be an Injustice.

Courts recognize the validity of quantum meruit claims premised on unjust enrichment.[47] Courts in Texas and across the country have also long recognized the basic fairness principles at heart in unjust enrichment claims. *See Menocal v. GEO Grp., Inc.*, 882 F.3d 905, 924, fn.14 (10th Cir. 2018) (affirming the certification of an unjust enrichment class where plaintiffs alleged they were forced to perform labor for defendants for $1 a day because "a contract implied in law, or unjust enrichment, arises not from consent of the parties, but from the law of natural immutable justice and equity."). The Texas Supreme Court has similarly held that quantum meruit premised on unjust enrichment is based upon the promise implied by law to pay for beneficial services rendered and knowingly accepted. *See Vortt,* 787 S.W.2d at 944 ("Recovery in quantum meruit will be had when nonpayment for the services rendered could result in an unjust enrichment to the party benefited by the work.").

---

[47] *Campbell v. Northwestern Nat'l Life Ins. Co.,* 573 S.W.2d 496, 498 (Tex. 1978)(holding that the trial court erred in nullifying a jury's award under quantum meruit to a plaintiff who, despite the absence of an express contract, managed construction and provided remodeling services to an apartment complex without just compensation.); *see also McArdle-Bracelin v. Cong. Hotel, LLC*, No. 1:20-cv-00861-TJM-TWD, 2022 U.S. Dist. LEXIS 29081 (N.D.N.Y Feb. 17, 2022)(denying defendant's motion to dismiss plaintiffs' unjust enrichment claims in a case where plaintiffs alleged defendants withheld gratuities from servers); *Costello v. Bd. of Trs. of the Flavius J. Witham Mem. Hosp.*, No. 1:19-cv-2956-JMS-MJD, 2019 U.S. Dist. LEXIS 203174, at *23 (S.D. Ind. Nov. 22, 2019)("As a preliminary matter, the Court notes that Ms. Costello can plead unjust enrichment in the alternative to breach of contract, and Defendants' argument that a claim for unjust enrichment can never be pursued by an at-will employee is incorrect."); *Cormier v. Landry's, Inc.,* No. 13-11822-NMG, 2013 U.S. Dist. LEXIS 167340, at *15 (D.Mass. Nov. 22, 2013)(denying motion to dismiss unjust enrichment claims based on plaintiff's allegations that her employer improperly deducted wages from her meals.).

Here, the facts are more favorable to Plaintiffs than in *Vortt*. In *Vortt*, the plaintiff was an educated, sophisticated entrepreneur who revealed valuable information to a corporation without securing a contract, in the vague hopes of embarking on a joint venture. *Vortt,* 787 S.W.2d at 944-45. But the venture never materialized. *Id.* at 946, ("Was fainter hope more richly rewarded?") (Hecht, J. dissenting). Nevertheless, the court recognized the inherent unfairness in denying plaintiff the reasonable value of the information he shared with defendant. *Id.* at 945.

Plaintiffs and Putative Class Members here are modest, relatively low wage earners who were subjected to Defendants' automatic deduction policy against their will. Thus, there is all the more reason to permit Plaintiffs and Putative Class Members to recover under equitable principles than there was in *Vortt*.

The right to recover in quantum meruit "is based upon the promise implied by law to pay for beneficial services rendered and knowingly accepted." *Campbell*, 573 S.W.2d at 498.  Here, the reasonable value of what Defendants owe Plaintiffs and Putative Class Members can be calculated by (1) ascertaining the number of shifts each RN and Psych Tech worked for at least 8 hours (and therefore had 30-minutes automatically deducted from their time and payroll records) each workweek; (2) multiplying that number by 30 minutes to determine their unpaid hours for each workweek; and (3) multiplying their unpaid hours by (a) their hourly rate, if their total hours worked in the workweek is less than or equal to 40, and/or by (b) 1.5 times their hourly rate for those hours in excess of forty in a workweek.

Further, Plaintiffs and Putative Class Members are entitled to recover attorney's fees and costs pursuant to Texas Civil Practice and Remedies Code §§ 37.009 and 38.001.

IV.    **CERTIFICATION UNDER FEDERAL RULE OF CIVIL PROCEDURE 23**

Plaintiffs are not required to prove their case by a preponderance of the evidence at this stage. Though there may be "overlap" between class certification discovery and merits discovery, the Court cannot make determinations on the weight of the evidence or the credibility of the evidence at this stage. *Dukes*, 564 U.S. at 351. Plaintiffs are only required to meet the prerequisites of Rule 23.

Plaintiffs clearly satisfy each of the required elements for class certification under Rule 23(a) and 23(b)(3). With respect to Rule 23(a), Plaintiffs satisfy the following elements:

(1) **Numerosity:** There is no dispute that the Putative Class Members include at least 244 RNs and Psych Techs.[48] Further, the Putative Class Members are readily identifiable from Defendants' personnel and payroll records.[49]

(2) **Common Questions of Law and Fact:** There is at least one predominant common question of law and fact in this case. First, whether Defendants failed to reimburse regular and overtime wages to their hourly, non-exempt RNs and Psych Techs during on-duty, meal breaks in violation of Texas common law is a predominate common question of law here. Second, whether Defendants implemented a rounding policy that systematically and regularly rounds employees' recorded work time down in a non-neutral manner, resulting in under-payment of regular and overtime wages is a predominate common question of fact here. Resolution of these common questions will determine whether Plaintiff and Putative Class Members are entitled to receive the reasonable value of the reimbursement under quantum meruit or unjust enrichment theories.

(3) **Typicality:** Plaintiffs' claims for violations of Texas common law theories of recovery are typical of the claims for Putative Class Members who, like Plaintiffs, also worked for Defendants as hourly, non-exempt RNs and Psych Techs. Plaintiffs and Putative Class

---

[48] Declaration of Carolyn Cottrell in Support of Plaintiffs' Motion for Class Certification ("Cottrell Decl.") at ¶ 8.
[49] *Id*.

Members are and were subject to the same meal break policy but were nonetheless required to remain on-duty and/or subject to interruption during those unpaid meal breaks. Likewise, Plaintiff and Putative Class Members were also subject to the same non-neutral rounding policies and practices.

(4) **Adequacy of Representation:** Plaintiffs have no conflict of interest with any other Putative Class Member and are represented by a law firm with ample experience working in nationwide, wage-and-hour class action cases.[50]

Plaintiffs also satisfy the requirements under Rule 23(b)(3) that "questions of law or fact common to class members predominate over any questions affecting only individual members" and that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). As noted above, the predominant questions here are (1) whether Plaintiffs and the Putative Class Members worked through, were interrupted, or were otherwise on-duty, during their breaks; (2) whether Defendants failed to pay Plaintiffs and Putative Class Members for 30 minutes after any missed or interrupted meal breaks for each 8-hour or greater shift worked; (3) whether Defendants implemented a system in bad faith wherein Plaintiffs and Putative Class Members were systematically discouraged from reporting unpaid work performed off the clock, either during their unpaid meal breaks and/or before and after their scheduled shifts; and (4) whether Defendants implemented a non-neutral rounding policy in violation of state law.

The only fair and efficient method for the adjudication of these claims is through a class action. Individual damages are relatively small and spread across a relatively large class. Rule 23 was designed to provide a procedural mechanism to precisely address this type of widespread, unlawful conduct that is not likely to be redressed through individualized litigation, which would prove too costly to pursue in light of the modest size of each class members' individual damages.

---

[50] Cottrell Decl. at ¶¶ 4-7, 9.

*See Marcus v. J.C. Penney Co*., No. 6:13-cv-736-MHS-KNM, 2016 U.S. Dist. LEXIS 115795 at
* 33 (E.D. Tex. Aug. 29, 2016) (finding class members' interest in individually controlling
separate actions to be minimal and concentrating litigation in one forum promotes judicial
efficiency).

## V.   ARGUMENT & AUTHORITIES

### A.  Standard for Class Certification.

The Supreme Court has emphasized "[c]lass actions serve an important function in our
system of civil justice." *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 99 (1981). The decision whether to
certify a class is committed to the district court's discretion. *Castano v. Am. Tobacco Co.,* 84 F.3d
734, 740 (5th Cir. 1996). While the primary focus is not on the merits of the Plaintiffs' claims, the
court "must conduct a rigorous analysis of the Rule 23 prerequisites before certifying a class." *Id*;
*see also Yates v. Collier*, 868 F.3d 354, 362 (5th Cir. 2017). This will entail "some overlap with
the merits of the Plaintiffs' underlying claim. That cannot be helped." *Dukes*, 564 U.S. at 351.

"When a court is in doubt as to whether or not to certify a class action, the court should err
in favor of allowing the class to go forward." *In re Reliant Sec. Litig*., No. H-02-1810, 2005 U.S.
Dist. LEXIS 9716, at *13 (S.D. Tex. Feb. 18, 2005) (quoting *In re Blech Sec. Litig.,* 187 F.R.D.
97, 102 (S.D.N.Y. 1999)); *see also Eisenberg v. Gagnon*, 766 F.2d 770, 785 (3d Cir. 1985) ("The
interests of justice require that in a doubtful case . . . any error, if there is to be one, should be
committed in favor of allowing a class action." (quoting *Esplin v. Hirschi*, 402 F.2d 94, 101 (10th
Cir. 1968), *cert. denied*, 394 U.S. 928, (1969)), *cert. denied*, 474 U.S. 946, (1985)).

Class certification is proper if the four requirements of Rule 23(a) and at least one of the
requirements of Rule 23(b) are satisfied. *See* Fed. R. Civ. P. 23 (a-b); *Amchem Products Inc. v.
Windsor*, 521 U.S. 591, 614 (1997) ("In addition to satisfying Rule 23(a)'s prerequisites, parties
seeking class certification must show that the action is maintainable under Rule 23(b)(1), (2), or

(3)"). Rule 23's requirements are met if the court finds that the underlying facts relevant to a particular Rule 23 requirement have been established by a preponderance of the evidence. *Teamsters Local 445 Freight Div. Pension Fund v. Bombadier Inc.*, 546 F. 3d 196, 202 (2d Cir. 2008); *Miles v. Merrill Lynch & Co. (In re Initial Pub. Offering Sec. Litig.)*, 471 F.3d 24, 41 (2d Cir. 2006).

Although certain facts may be relevant to both a Rule 23 requirement and the merits of the case, the court must assure that a class certification motion does not become a pretext for a partial trial on the merits. *In re IPO*, 471 F.3d at 41. Indeed, the facts relevant to a Rule 23 certification determination may simply consist of allegations of conduct unlawfully directed at, or affecting, a class of individuals, and the court, in considering a certification motion, should not assess any aspect of the merits of the case unrelated to a Rule 23 requirement. *Id.* at 42.

Where, as here, "the claim is that an employer's policy and practices violated labor law, the key question for class certification is whether there is a consistent employer practice that could be a basis for consistent liability." *Wren v. RGIS Inventory Specialists*, 256 F.R.D. 180, 204 (N.D. Ca. 2009). "[W]here the employer has a uniform policy that is uniformly applied, the appropriateness of class certification is "easily established." *Id.*

Indeed, courts routinely certify classes under Rule 23 where, as here, the allegations relate to off-the-clock and meal period violations. *See, e.g.*, *Rosiles-Perez v. Superior Forestry Serv., Inc.*, 250 F.R.D. 332, 345-48 (M.D. Tenn. 2008) (Rule 23(b)(3) and (b)(2) certification in off-the-clock overtime case); *Iglesias-Mendoza v. La Belle Farm, Inc.,* 239 F.R.D. 363, 373 (S.D.N.Y. 2007) (Rule 23(b)(3) certification of off-the-clock overtime violation case); *Kurihara v. Best Buy Co., Inc.,* No. C 06-01884 MHP, 2007 U.S. Dist. LEXIS 64224 at *34 (N.D. Ca. Aug. 30, 2007) (Rule 23(b)(3) certification of off-the-clock and meal break claims); *Whiteway v. FedEx Kinko's*

*Office & Print Servs.*, No. C 05-2320 SBA, 2007 U.S. Dist. LEXIS 69193 at *30 (N.D. Ca. Sept. 14, 2006) (Rule 23(b)(3) certification of overtime, meal period and accurate records claims); *Godfrey v. Chelan County PUD*, No. CV-06-00332-JLQ, 2007 U.S. Dist. LEXIS 58569 at *13 (E.D. Wash. Aug. 10, 2007) (Rule 23(b)(3) certification of off-the-clock class); *Martinez v. Mecca Farms, Inc.,* 213 F.R.D. 601, 605-06 (S.D. Fla. 2002) (Rule 23(b)(3) certification of waiting time claim); *Trotter v. Perdue Farms, Inc.*, No. CIV.A.99-893-RRM, 2001 U.S. Dist. LEXIS 13212 at *6-8 (D. Del. Aug. 16, 2001) (granting multi-state class certification in case involving allegations of off-the-clock work and overtime violations). This Court should do the same.

### B.  This Case Meets the Criteria for Class Certification Under Rule 23(a).

Rule 23(a) sets forth the threshold criteria for class certification:

> One or more members of a class may sue or be sued as representative parties on behalf of all members only if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). These four factors are commonly referred to as: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy.

### 1.  The Putative Class Members Are So Numerous that Joinder Is Impossible.

Rule 23(a)(1) requires that "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). To satisfy this first element, a plaintiff must ordinarily demonstrate some evidence or reasonable estimate of the number of purported class members. *Zeidman v. J. Ray McDermott & Co., Inc.*, 651 F.2d 1030, 1038 (5th Cir. 1981). The proper focus of the Rule 23 numerosity requirement is not on numbers alone, but on whether joinder of all members is practicable. *Id.* Generally, courts in the Fifth Circuit find a class of over forty members

meets the numerosity requirement, and some courts have even certified classes consisting of twenty-five to thirty members. *See, e.g.*, *Burns v. Chesapeake Energy, Inc.,* No. 5:15-cv-01016-RCL, 2018 U.S. Dist. LEXIS 167526, at *11 (W.D. Tex. Sept. 28, 2018); *see also Zeidman,* 651 F.2d at 1038; *cf. Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 624 (5th Cir. 1999) (finding 100 to 150 members is within the range that satisfies Rule 23(a)(1)'s numerosity requirement).

Here, it is obvious that the numerosity requirement is met. Based on the class list produced, Plaintiffs estimate Defendants have employed approximately 350 hourly, non-exempt RNs and Psych Techs at the Facility during the relevant four-year limitations period for quantum meruit claims in Texas.[51]

### 2.   Questions of Law and Fact Are Common to the Class.

Rule 23(a)(2) requires a plaintiff to show "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(a). The test for commonality is not demanding—"[e]ven a single common question of law or fact can suffice to establish commonality, so long as resolution of that question 'will resolve an issue that is central to the validity of each one of the [Putative Class Member's] claims in one stroke.'" *Ibe v. Jones*, 836 F.3d 516, 528 (5th Cir. 2016) (quoting *Dukes*, 564 U.S. at 350); *see also James v. City of Dallas*, 254 F.3d 551, 570 (5th Cir. 2001). Most, importantly, commonality requires a plaintiff to demonstrate that the putative class members "have suffered the same injury." *In re Deepwater Horizon*, 739 F.3d 790, 810 (5th Cir. 2014) (quoting *Dukes*, 564 U.S. at 350). As explained in *Newberg on Class Actions*:

> Rule 23(a)(2) does not require that all questions of law or fact raised in the litigation be common. The test or standard for meeting the Rule 23(a)(2) prerequisite is qualitative rather than quantitative – that is, there need only be a single issue common to all members of the class. Therefore, **this requirement is easily met in most cases**.

---

[51] Cottrell Decl. at ¶ 8.

1 *Newberg*, § 3.10 at pp. 3-48 to 3-50 (emphasis added). Put another way, where there is contention of a common nucleus of operative facts that leads to an injury that is capable of class-wide resolution, commonality will be found. *Id.*

Here, Rule 23(a)(2)'s requirement is amply met, as there are several questions of law and associated questions of fact common to the Putative Class Members which will permit the Court to resolve their claims class-wide, in "one stroke." *Ibe*, 836 F.3d at 528.

> **i.   *Plaintiff and the Putative Class Members Share the Same Ethical Obligations and Patient Care Job Duties.***

Plaintiff and Putative Class Members owe a duty of competency and care to their patients, first and foremost[52] Indeed, the American Nurse Association's Code of Ethics (the "ANACE") mandates that a nurse's "primary commitment is to the patient," and that nurses have "authority, accountability and responsibility for nursing practice."[53] The ANACE makes clear that "the nurse's commitment to the patient should remain steadfast when conflict occurs or persists."[54] Likewise, Section 301.452 of the Texas Nursing Practice Act makes failure to care adequately for a patient a basis for disciplinary action. Tex. Occ. Code § 301.452(b)(14). In fact, a violation of this Section can authorize the nursing board to suspend or revoke the nurse's license. Tex. Occ.

---

[52] *See* Ex. P, "Work Rules" at p. 2; *see also* Ex. A, Broussard Depo. at pp. 41:6-12, 42:15-46:15, 45:6-25, 46:7-47:3 (RNs and Psych Techs subject to discipline for "incompetence" "neglect" and "engaging in unsafe practices."), 37:19-38:05, 46:7-47:3 (admitting that both RNs and Psych Techs owe an ethical duty to patients, that neglect or abandonment will violate that duty, and that Defendants take RNs and Psych Techs' ethical duties seriously as a matter of Hospital Policy.); Ex. N, RFAs No. 47.

[53] *See* Ex. O, "ANA Nurses Association Code of Ethics" at p. 2, Retrieved from http://www.nursingworld.org/MainMenuCategories/EthicsStandards/CodeofEthicsforNurses/Co de-ofEthics-For-Nurses.html.

[54] https://www.nursingprocess.org/nursing-code-of-ethics-and-interpretive-statements.html.

Code §§ 301.453(a)(5-6). Thus, as RNs and Psych Techs, Plaintiffs and Putative Class Members all have mandatory ethical obligations to the patients in their care at Defendants' Facility.

Plaintiffs and Putative Class Members also share common patient care responsibilities and job duties.[55] Indeed, **all the** Putative Class Members care for psychiatric patients that require constant monitoring, even during unpaid meal breaks.[56] These common job duties and ethical obligations, in combination with Defendants' policies and practices, cause these RNs and Psych Techs to regularly work off-the-clock, either during their meal breaks and before or after their shift.

### ii. *Plaintiffs and the Putative Class Members Are Subject to Defendants' Common Policies and Practices.*

Defendants subject Plaintiffs and Putative Class Members to numerous common policies and practices that unjustly deprive RNs and Psych Techs of pay for all hours worked. Because a determination of whether Defendants' common policies and practices deprived Plaintiffs and Putative Class Members of wages can be made on a class-wide basis, Rule 23(a)(2)'s commonality requirement is satisfied.

Defendants admit they subjected all Putative Class Members to a common policy and practice whereby Defendants **automatically deducted** hours worked from these RNs and Psych Techs' time records based on an *assumption* that these employees received a *bona fide* meal break.[57]

---

[55] *See* Ex. D, Job Descriptions.
[56] *See* Ex. C, Roberts Depo at p. 61:07-14 (testifying that charge nurses organized rounds every fifteen minutes, if not enough techs, then nurses would do them, and that as a charge nurse herself, she did the same.); Ex. B, Espree Depo at p. 45:03-56 (discussing rounds every fifteen minutes for techs and rounds every thirty minutes for nurses).
[57] *See* Ex. E, Jonas Depo. at p. 75:03-24.

As this Court previously recognized, Defendants' Work Breaks Policy affects all Putative Class Members.[58] But Defendants also uniformly apply their Overtime Policy, 7-minute rule, Rounding Policy, and Recording Hours Worked Policy to the entire Putative Class.[59] Further, Defendants admit that all their hourly, non-exempt RNs and Psych Techs must follow their time correction process, without exception, in order to be reimbursed for their automatically deducted meal breaks.[60] Defendants admit these uniform, common policies and practices are still in place and systematically apply to all current RNs and Psych Techs today.[61]

Critically, Defendants' time correction process is controlled by a single individual, the Clinical Director, who, for the majority of the Class Period was Miechael Eason. But evidence reveals that when Plaintiffs and Putative Class Members attempted to follow this procedure to obtain reimbursement for the instances where they worked off-the-clock, they were cowed down by Eason and the Facility into silent compliance through harassment and intimidation.[62] Thus, whether Defendants' time correction process was merely illusory will resolve whether Defendants' automatic meal break deduction policy illegally deprived Plaintiffs and Putative Class Members of pay for all hours worked on a class-wide basis.

Similarly, Defendants admit they subject all RNs and Psych Techs to discipline for failing to meet Defendants' uniform workplace policies, including "engaging in unsafe practices," "insubordination," "incompetence," "neglect," and "poor performance."[63] These policies, in

---

[58] *See* Dkt. 50 (Order Denying Motion for Collective Treatment), p. 10.
[59] *See* Ex. N, RFAS Nos. 1, 2, 40 and 42; Ex. L, Overtime Policy; Ex. A Broussard Depo. at pp.107:17-25, 109:11-24.
[60] *See* Ex. E, Jonas Depo. at pp. 123:04-124:17.
[61] *See* Ex. A, Broussard Depo. at pp. 102:05-113:22.
[62] *See* Ex. K, Thompson Depo. at pp. 52:18-21, 53:20-54:08 ("She didn't want it documented that we weren't getting breaks."); Ex. C, Roberts Depo. at p. 89:18-23; Ex. B, Espree Depo at pp. 68:11-13, 84:09-25.
[63] *See* Ex. P, "Work Rules" at p. 2; *see also* Ex. A, Broussard Depo. at p. 41:6-12.

combination with the RNs and Psych Techs' ethical obligations to put patient care first, foster an environment where off-the-clock work is not optional, but rather it is a necessary part of all the RNs and Psych Techs' jobs that they must do to avoid being discipline.[64]

Further, Defendants also admit they subject all Putative Class Members to a common policy and practice of **rounding** their clock-in and clock-out times to the nearest 15-minute interval, while at the same time mandating workers clock-in no earlier than seven minutes before their scheduled start time and to clock-out no later than seven minutes after their scheduled end-of-day.[65] Likewise, common evidence reveals the Facility instituted a practice that prohibits all non-exempt employees (including Plaintiffs and Putative Class Members) from clocking-in before 6:45 and clocking-out after 7:08.[66] In combination, these common policies and practices necessarily result in a system that favors Defendants by rounding the Putative Class Members' hours worked (and thus the pay they receive) down. In sum, Defendants' common policies and practices led to a class-wide injury—systematically depriving Plaintiffs and Putative Class Members of pay for time worked off-the-clock, either during unpaid meal breaks or before and after their scheduled shifts. Thus, Rule 23(a)(2)'s commonality requirement is met.

### 3.   Plaintiffs' Claims Are Typical of The Class.

Like commonality, the test for typicality is not demanding. *Mullen*, 186 F.3d at 625-26. The test for typicality focuses on the similarity between the named plaintiffs' legal and remedial theories and the theories of those whom they purport to represent. *Id.*

Plaintiffs here, like all the Putative Class Members, were Defendants' hourly, non-exempt RNs/Psych Techs who Defendants subjected to an automatic meal break deduction policy even

---

[64] *Id.*
[65] *See* Ex. A, Broussard Depo. at pp. 60:03-61:06.
[66] *Id.*

though they invariably worked during their meal breaks. Thus, Plaintiffs will make the same arguments as the Putative Class Members, i.e., that Defendants' policy of automatically deducting time for meal breaks violates the law because it deprives these employees of pay for all hours worked during missed and interrupted meal breaks. Likewise, Plaintiffs' and Putative Class Members' rounding claims are rooted in the same legal theory. That is, Defendants' common policies and practices necessarily result in a system that favors Defendants by rounding the Putative Class Members' hours worked (and thus the pay they receive) down.

Thus, because Plaintiffs' and the Putative Class Members' off-the-clock claims arise from the same course of conduct and are based on the same legal theories, Rule 23(a)(3)'s typicality requirement is satisfied. *See Mullen*, 186 F.3d at 625-26.

### 4. Plaintiff Will Fairly and Adequately Protect the Interests of the Class.

Rule 23(a)(4) requires that, before a class can be certified, the Court must find that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This requirement turns on two questions: (1) whether Plaintiff and her counsel have any conflicts of interest with other class members; and (2) whether Plaintiff and her counsel will prosecute the action vigorously on behalf of the class. *Patel v. Reata Pharms., Inc.,* 549 F. Supp. 3d 559, 566 (5thCir. 2021). The adequacy requirement is based on principles of constitutional due process; accordingly, a court cannot bind absent class members if class representation is inadequate. *Hansberry v. Lee*, 311 U.S. 32, 42-43 (1940).

Here, Plaintiffs do not have any conflicts with Putative Class Members and, along with Plaintiffs' Counsel, have prosecuted this action vigorously throughout the litigation.[67] Plaintiffs

---

[67] Cottrell Decl. at ¶ 10.

have agreed to abide by all the necessary duties of a class representative, including assisting counsel in the litigation.[68] Accordingly, Plaintiffs are adequate class representatives.

Moreover, Plaintiffs have selected counsel with extensive experience in wage and hour class actions, having acted as class counsel in hundreds of class cases since the firm's inception in 1993.[69] Proposed Class Counsel is more than qualified and able to litigate the Putative Class Members' claims.[70] Thus, there can be no doubt that proposed Class Counsel can fairly and adequately protect the interests of the class by vigorously prosecuting this action on their behalf.

Accordingly, Rule 23(a)(4) is satisfied.

### C.  Plaintiffs' Claims Satisfy the Requirements of Rule 23(b)(3) Because Common Issues Predominate Over Individual Questions.

In addition to satisfying Rule 23(a), a plaintiff must also meet "at least one of the alternative requirements of Rule 23(b)." *Jackson v. Motel 6 Multipurpose, Inc.*, 130 F.3d 999, 1005 (11th Cir. 1997). Rule 23(b)(3) requires the Court to find "that the questions of law or fact common to the class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

In order to "predominate," common issues must constitute a significant part of the individual cases. *Mullen,* 186 F.3d at 626. In satisfying predominance, "plaintiffs must be able to show that their damages stemmed from the defendant's actions that created the legal liability." *Pulaski & Middleman, LLC v. Google, Inc.*, 802 F.3d 979, 987-88 (9th Cir. 2015) (quoting *Levya v. Medline Ind., Inc.*, 716 F.3d 510, 514 (9th Cir. 2013)); *see also In re Deepwater Horizon*, 739

---

[68] *Id*.
[69] *Id.* at ¶¶ 4-6.
[70] *Id*.

F.3d at 810-811 ("The legal requirement that class members have all 'suffered the same injury' can be satisfied by an instance of the defendant's injurious conduct...").

Conversely, "[a]n individual question is one 'where members of a proposed class will need to present evidence that varies from member to member,' while a common question is one where 'the same evidence will suffice for each member to make a *prima facie* showing [or] the issue is susceptible to generalized, class-wide proof.'" *Tyson Foods v. Bouaphakeo*, 577 U.S. 442, 453, 136 S. Ct. 1036, 1045 (2016) (quoting 2 W. Rubenstein, Newberg on Class Actions § 4:50, 196-97 (5th ed. 2012)).

The central question in this case is whether Defendants' uniform policies and practices require hourly, non-exempt RNs and Psych Techs to work off-the-clock, either during their unpaid meal breaks or before and after their scheduled shift, without pay. The answer to this question can easily be established through generalized, common proof that will determine liability class wide; thus, the common questions predominate over individual issues.

Indeed, there can be no doubt that common issues predominate, as Plaintiffs' and the Putative Class Members' damages arise from Defendants' systematic failures to pay RNs and Psych Techs for all time worked. For example, the legal question of whether Defendants ensured that compensation was provided for missed or interrupted meal breaks that Defendants knew or should have known about through due diligence and reasonable inquiry, is answered on common proof for the class as a whole: this proof includes the policies of the Defendants, the testimony of Defendants' employees, and the testimony of Plaintiffs and the Putative Class Members. Here, because Defendants admit they automatically deduct time based on the assumption that a *bona fide* meal break was taken, in order to avoid a wage and hour violation, Defendants must ensure that their assumption is correct, i.e., that Plaintiffs and the Putative Class Members were not actually

working during these unpaid breaks or ensure that the employee is paid for any time that is actually worked. *See Beck v. Nephron Corp.,* No. 1:13-CV-3408-MHS, 2014 U.S. Dist. LEXIS 197409 at * 7 (N.D. Ga. Dec. 29, 2014).

If an employer knows, or should know through due diligence or reasonable inquiry, that work is being performed, it is required to pay for that work, even in situations where it was being reported inaccurately that Plaintiffs received uninterrupted meal breaks or even in situations where a claim for reimbursement was not made. *See Newton v. City of Henderson*, 47 F.3d 746, 748 (5thCir. 1995) ("An employer who is armed with knowledge that an employee is working overtime cannot stand idly by and allow an employee to perform overtime work without proper compensation, even if the employee does not make a claim for the overtime compensation.") (citation omitted). And it does not matter if the employee was supposed to report the work but failed to do so, nor does it matter whether the employee was authorized to perform the work. *Id.* at 749. If the employer knows (actual or constructive knowledge) or has reason to believe work is being performed, it must pay for it. *Id.*

Further, Plaintiffs' and Putative Class Members' clock in/out punches, without rounding adjustments, electronically captures their actual hours worked. Thus, the Court need look no further than comparing Plaintiffs' and Putative Class Members' clock in/out punches with these workers' time records to determine whether Defendants' rounding policies systematically rounded the RNs and Psych Techs' time down, in a non-neutral way, favoring Defendants.

Accordingly, because Plaintiffs can "show that their damages stemmed from [Defendants'] actions that created the legal liability" using common proof, common issues predominate over individual questions, and Rule 23(b)(3)'s requirement is satisfied. *Pulaski*, 802 F.3d at 987-88; *see also In re Deepwater Horizon*, 739 F.3d at 810-811.

### D.  Courts Across the Country Routinely Certify Similar Classes.

It is not uncommon for courts to certify Rule 23 classes based on unjust enrichment claims in a wage and hour context. In fact, courts gave certified classes similar to the Putative Class here. *See*, *e.g.*, *Verma v. 3001 Castor, Inc.*, No. 13-3034, 2016 U.S. Dist. LEXIS 164026, at *31 (E.D. Pa., Nov. 29, 2016) *aff'd*, 937 F.3d 221 (3rd Cir. 2019); *Herzfeld v. 1416 Chancellor, Inc.*, No. 14-4966, 2017 U.S. Dist. LEXIS 88732 at *29-30 (E.D. Penn. June 9, 2017) (certifying an unjust enrichment class of exotic dancers whose tips were inequitably retained by their employer under Rule 23); *Martins v. 3PD Inc.,* No. 11-11313-DPW, 2014 U.S. Dist. LEXIS 40638 at *41 (D. Mass. Mar. 27, 2014) (certifying an unjust enrichment class in a case where plaintiffs suffered unlawful deductions from their wages); *Doe v. Banc, Jack & Joe LLC*, No. 17-cv-03843 (KSH) (CLW), 2020 U.S. Dist. LEXIS 95129, at *23, fn.5 (D.N.J. June 1, 2020) (refusing to dismiss plaintiffs' unjust enrichment class claims after finding common issues predominated). This Court should do the same.

## VI.  CONCLUSION

For these reasons, Plaintiffs satisfy all the requirements of Rule 23(a) and Rule 23(b)(3), and the Court should certify the Putative Class of Defendants' hourly non-exempt RNs and Psych Techs that worked at the Facility during the Class Period.

Dated: July 18, 2022

Respectfully submitted,

SCHNEIDER WALLACE
COTTRELL KONECKY LLP
*/s/ Ved Chitale*
_____

Carolyn H. Cottrell (*pro hac vice*)
Ori Edelstein (*pro hac vice*)
Samantha A. Smith (*pro hac vice*)
2000 Powell Street, Suite 1400
Emeryville, California 94608
Tel: (415) 421-7100; Fax: (415) 421-7105
ccottrell@schneiderwallace.com
oedelstein@schneiderwallace.com
ssmith@schneiderwallace.com

Ved D. Chitale
3700 Buffalo Speedway, Suite 960
Houston, Texas 77098
Tel: (713) 338-2560; Fax: (415) 421-7105
vchitale@schneiderwallace.com

*Counsel for Plaintiff, Class and Collective Members*

## CERTIFICATE OF CONFERENCE

Plaintiffs' counsel hereby certifies that the parties have conferred via written correspondence. Defendants are opposed to the Motion.

*/s/ Ved Chitale*
Ved Chitale

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing document with the Clerk of the Court for the United States District Court, District of Oregon, by using the Court's CM/ECF system on July 18, 2022. I further certify that all parties and/or their counsel of record are registered CM/ECF users, and that service will be accomplished by the Court's CM/ECF system in accordance with the Federal Rules of Civil Procedure.

*/s/ Ved Chitale*
Ved Chitale