**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION**

| | | |
|---|---|---|
| **LINDA ROBERTS,** *et al.*, | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | |
| **v.** | § | |
| | § | **CIVIL ACTION NO.  1:20-CV-00092-MAC** |
| **BAPTIST HEALTHCARE SYSTEM, LLC,** *et al.*, | § | |
| | § | |
| | § | |
| **Defendants.** | § | |

**REPORT AND RECOMMENDATION ON PLAINTIFFS' OPPOSED MOTION TO
RECONSIDER THE COURT'S RULING ON COLLECTIVE TREATMENT**

Pursuant to 28 U.S.C. § 636, the Federal Rules of Civil Procedure, and the Local Rules for the Eastern District of Texas, this matter has been referred to the undersigned for pre-trial management.  Now before the undersigned magistrate judge for review and submission of a report with recommended findings of fact and conclusions of law is Plaintiffs' "Motion to Reconsider Denial of Plaintiffs' Motion for Collective Treatment" (doc. #68) and the accompanying response, reply, sur-reply, and supplemental briefs filed by the parties (doc. #s 78, 83, 86, 101, 102).

**I.  BACKGROUND**

In the court's original Order denying Plaintiffs' motion for collective treatment, the court held that Plaintiffs' proposed collective action of patient care staff (including RNs, LVN/LPNs, CNAs, nursing aide technicians, non-exempt therapists, other patient care employees) who worked for Defendants in different departments and at different locations from March 4, 2017, to present were not "similarly situated."  (Doc. #50.)

Now pending before the court is Plaintiffs' opposed "Motion to Reconsider Denial of Plaintiffs' Motion for Collective Treatment." (Doc. #68.) Plaintiffs have narrowed their proposed collective action members to only registered nurses (RNs) and psychiatric technicians (Psych Techs) employed by Defendants at one facility from March 2017 to present and request that the court reconsider its Order (doc. #50) denying treatment of this case as a collective action and facilitate notice to the collective. Defendants filed a response in opposition arguing that Plaintiffs' motion should be denied because Plaintiffs have again failed to show that their proposed group is "similarly situated" as required under the law. (Doc. #78.)

Plaintiffs filed a reply asserting that they have narrowed their proposed collective to a manageable group that is similarly situated, uniformly subject to Defendants' same violative policies and practices, and the group lacks disparate factual and employment settings. (Doc. #83.) Defendants filed a sur-reply arguing that Defendants policies and practices are perfectly lawful under the Fair Labor Standards Act (FLSA) and Plaintiffs have still not shown the similarities necessary to maintain a collective action beyond mere facts of job duties and pay provisions. (Doc. #86.)

The court then amended the scheduling order in this case (doc. #91) to allow the parties to conduct additional discovery and supplement their briefing on the collective action issue at hand. The parties have now completed their discovery on this issue, and the parties filed their supplemental briefing. (Doc. #s 101, 102.) Plaintiffs' supplemental brief alleges that the additional discovery conducted further confirms that the putative collective action members are "similarly situated" as required under *Swales* and common evidence shows that Defendants' defenses cannot preclude a collective action. (Doc. #101.) Defendant's supplemental brief asserts that after conducting additional discovery of the remaining putative plaintiffs, there is still

no evidence of an unlawful policy or practice by Defendants' and there are important factual questions specific as to each potential opt-in which defeats a collective action.  (Doc. #102.)

## II.  STANDARD FOR A MOTION TO RECONSIDER

Federal Rule of Civil Procedure 54(b) states that "any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities."  This rule allows parties to seek reconsideration of interlocutory orders and authorizes the district court to revise any order or other decision that does not end the action. *Austin v. Kroger Tex., L.P.,* 864 F.3d 326, 336 (5th Cir. 2017).  It is not uncommon for courts to reconsider motions for collective actions.  *See Rosales v. Industrial Sales & Services*, No. 6:20-cv-30, 2021 WL 4480747, at *17 (S.D. Tex. Sept. 30, 2021) (court denied certification without prejudice stating that plaintiff could re-assert later); *Flores-Litman v. Flight Services & Sys., LLC*, No. 5-20-CV-00346-FB-RBF, 2020 WL 7011906, at *2 (W.D. Tex. Oct. 20, 2020) (stating that plaintiff may re-urge her motion at a later date if further evidence comes to light showing that conditionally certifying this action would be appropriate).  Defendant is not opposed procedurally to Plaintiffs asserting a motion to reconsider, but Defendants, of course, are opposed substantively to a collective action.

## III.  DISCUSSION

The FLSA allows an employee to bring an action on behalf of themselves and "other employees similarly situated." 29 U.S.C. § 216(b).  In addition to permitting plaintiffs to litigate on behalf of "similarly situated" employees, this provision creates an "opt-in" framework—those who are "similarly situated" and wish to litigate their claims, must affirmatively opt-in to the

litigation through written consent. *See Sandoz v. Cingular Wireless LLC*, 553 F.3d 913, 916 (5th Cir. 2009).

In this case, Plaintiffs, Linda Roberts and Elizabeth Espree, have asserted an action against Baptist Defendants for violations of the FLSA and are seeking a collective action on behalf of others similarly situated. At one point, there were 12 prospective Opt-in Plaintiffs that filed consent forms in this case. (Doc. #s 29-33, 45, 61-66.) After the court's previous order denying a collective action and the filing of Plaintiffs First Amended Complaint (which narrowed the proposed group of the collective action), four of the opt-ins (Manuel, Breaux, Carter, and Jackson) were dismissed without prejudice as they no longer met the proposed collective action of RNs and Psych Techs. (Doc. #s 93-94.) Later, another opt-in (Graham) withdrew her consent to be a part of this action. (Doc. #95.) As of this date, there are seven remaining prospective opt-ins—Dandrill Henson (doc. #30), Justice Miller (doc. #45), Magloire Bajika (doc. #61), Aisha White (doc. #62), Monique Parkerson (doc. #64), Marchara Thompson (doc. #65), and Brooke Corder (doc. #66).[1]

### A. *Swales* Standard

On January 12, 2021, the Fifth Circuit established the standard for determining an FLSA collective action in the Fifth Circuit. *Swales v. KLLM Trasnport Serv., L.L.C.*, 985 F.3d 430 (5th Cir. 2021).

Prior to *Swales*, many courts in the Fifth Circuit followed the now defunct *Lusardi* two-step approach. This approach came from a 1987 New Jersey district court opinion in *Lusardi v. Xerox Corporation*, which laid out a two-step process to determine whether prospective opt-in

---

[1] Defendants asserted in a recent response that two of these opt-ins would not present for deposition, because Corder wants to withdraw, and White has become non-responsive and may also withdraw. (Doc. #99.) Also, Defendants noted that Henson has neither answered written discovery nor presented for deposition, and Plaintiffs advised them that he has also become non-responsive. (*Id.*)

plaintiffs in a proposed collective are "similarly situated" enough to satisfy the FLSA.  *See Lusardi v. Xerox Corp.*, 118 F.R.D. 351, 361 (D.N.J. 1987).  Step one, known as "conditional certification," determined whether proposed members were similar enough to receive initial notice of the pending lawsuit.  *Id.*  Step two, known as the decertification stage, occurred after full discovery allowing the court to make a final determination as to whether the named plaintiffs and opt-ins were "similarly situated" so they may proceed to trial as a collective.  *Id.*  The court considered three factors at step two: (1) the disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to the defendant which appear to be individual to each plaintiff; and (3) fairness and procedural considerations.  *Id.*  If the court found that the opt-ins were not sufficiently similar to the named plaintiffs, it would then dismiss the opt-in employees, leaving only the named plaintiff's original claims.  *Id.*; *see also Swales*, 985 F.3d at 436-437.

The *Swales* standard eliminates *conditional certification*[2] (or any "certification" for that matter) and instead, considers whether, after preliminary discovery, opt-in notice should be distributed to potential plaintiffs who are "similarly situated" as stated in the FLSA.  *Swales*, 985 F.3d at 436-437. ("The bottom line is that the district court has broad litigation-management discretion . . . cabined by the FLSA's 'similarly situated' requirement and the Supreme Court's decision in *Hoffman La-Roche*.  But it is not captive to *Lusardi* or any 'certification' test."); *see also In re A&D Interests, Inc.*, No. 22-40039, 2022 WL 1315465, at *1 (5th Cir. May 3, 2022) (finding *Swales* "did away with conditional certification in FLSA cases."); *Avila v. SLSCO, Ltd.*, No. 3:18-CV-00426, 2022 WL 784062, at *4 (S.D. Tex. Mar. 15, 2022), *R. & R. adopted*, No.

---

[2] "'Conditional certification,' required nothing more than substantial allegations that the similarly situated members were together the victims of a single decision, policy or plan.'"  *Dardar v. Pit Stop Eatery of Houma, LLC*, No. CV 20-1605, 2021 WL 5513417, at *2 (E.D. La. Mar. 30, 2021) (quoting *Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1214 n.8 (5th Cir. 1995), *overruled on other grounds*, 539 U.S. 90 (2003)).

3:18-CV-00426, 2022 WL 980273 (S.D. Tex. Mar. 31, 2022) ("In January 2021, the Fifth Circuit did away with conditional certification altogether."); *Young v. Energy Drilling Co.*, No. 4:20-cv-1716, 2021 WL 1550343 *1 (S.D. Tex. April 20, 2021) (construing motion for conditional certification as a motion for Section 216(b) notice with no "certification").

*Swales* states that a "district court should identify, at the outset of the case, what facts and legal considerations will be material to determining whether a group of 'employees' is 'similarly situated.' And, then it should authorize preliminary discovery accordingly. The amount of discovery necessary to make that determination will vary case by case, but the initial determination must be made, and as early as possible." *Swales*, 985 F.3d at 441. The *Swales* standard still takes into consideration the three factors used at step two of the *Lusardi* approach. *Id.*

In this case, full discovery has taken place, a prior motion for collective action was denied per *Swales*, and the court also allowed an extension of all deadlines and additional discovery and briefing regarding the collective action issue based upon Plaintiffs' narrowed proposed collective. Consequently, the court is ready to make a decision as to whether the narrowed proposed collective is "similarly situated."

### B. Similarly Situated

It is the plaintiff's burden to show the proposed collective-action members are "similarly situated." *Swales*, 985 F.3d at 443 n.65. Courts consider three factors to determine whether proposed putative collective action members are "similarly situated": "(1) the disparate factual and employment settings of the proposed plaintiffs; (2) the various defenses available to the defendant which appear to be individual to each proposed plaintiff; and (3) fairness and procedural considerations." *Torres v. Chambers Protective Serv., Inc.*, No. 5:20-CV-212, 2021

WL 3419705, at *3 (N.D. Tex. Aug. 5, 2021).  The term "similarly situated" does not mean that the proposed members are "identically situated."  *Id.* at *4.  The court must instead ask whether the plaintiff has "demonstrated similarity among the individual situations." *Segovia v. Fuelco Energy* LLC, No. SA-17-CV-1246-JKP, 2021 WL 2187956, at *8 (W.D. Tex. May 28, 2021).  This can be done by showing a factual nexus that binds the plaintiff and the potential collective action members as alleged victims of a particular policy or practice. *Id.* Having some differences between the collective action members "will not preclude a collective action unless they are material to ultimate issues before the trial court." *Id.* at *8.  Below, the court will consider these three factors.

### 1. Factual and Employment Settings

The first factor "assesses the opt-in plaintiffs' job duties, geographic location, supervision, and salary to determine if the potential opt-ins are similarly situated." *Snively v. Peak Pressure Control, LLC*, 314 F. Supp. 3d 734, 739 (W.D. Tex. 2018).  Plaintiffs' original proposed collective could not meet these requirements as there were several different job titles and duties, 81 different departments, 22 different locations, and 124 department supervisors. (Doc. #50.)

Plaintiffs' newly proposed collective is much narrower and consists only of RNs and Psych Techs (approximately 70 RNs and 95 Psych Techs) with the same job description, same job duties, work at the same facility, the same supervising administrator (Sally Broussard) and clinical director (Miechael Eason), the same training, the same time-keeping systems, and are subject to the same policies and practices.  (Doc. #68.)  Defendants do not dispute these facts but argue that at various times, there have been up to seven different units at the facility with varying patient counts, acuity levels, and staffing.  (Doc. #78, at 8.)  Also, RNs and Psych Techs can

work under multiple different charge nurses over time, who are responsible for scheduling meal breaks. (*Id.* at 8-9.) Overall, the undersigned finds that Plaintiffs' evidence as to these subfactors weigh in favor of the proposed collective being "similarly situated." *See Segovia v. Fuelco Energy, LLC*, No. SA-17-CV-1246-JKP, 2021 WL 2187956, at *9 (W.D. Tex. May 28, 2021) ("Variations of a particular workday or variations between employees 'go to the magnitude of the effect of the common decision on individual [employees] rather than undermining the fact that it was a common policy, plan, or practice that affected them all.'").

There are, however, additional considerations. In *Segovia*, the court stated, "the question is not whether Plaintiffs all have the same exact workday," but rather "whether they are all subjected to a common policy, plan, or practice—the same factual and employment settings." *Id.* (quoting *Serrano v. Republic Servs., Inc.*, No. 2:14-CV-77, 2017 WL 2531918, at *19 (S.D. Tex. June 12, 2017)). Thus, courts commonly look for the "presence of a common policy, plan, or practice affecting all putative class members . . . in assessing the first factor." *Vanzzini v. Action Meat Distribs., Inc.*, 995 F. Supp. 2d 703, 721 (S.D. Tex. 2014); *see e.g. Hamm v. Acadia Healthcare Co., Inc.*, No. CV 20-1515, 2022 WL 2713532, at *3 (E.D. La. July 13, 2022) (common and violative practice whereby meal breaks were subject to interruption at any time and were therefore "predominantly or primarily for the benefit of the employer."); *Loy v. Rehab. Synergies, LLC*, No. 7:18-CV-4, 2021 WL 3931926, at *10-11 (S.D. Tex. Sept. 2, 2021) (defendants productivity requirements led to an unwritten practice of widespread off-the-clock work to meet its demands); *Dardar v. Pit Stop Eatery of Houma, LLC*, No. CV 20-1605, 2021 WL 5513417, at *3 (E.D. La. Mar. 30, 2021) (defendant's unwritten plan was paying its workers overtime in cash at a rate less than time and a half); *Harris v. Chipotle Mexican Grill, Inc.*, No. 13-CV-1719 (SRN/SER), 2017 WL 2537228, at *6 (D. Minn. June 12, 2017) (Chipotle had an

unwritten policy requiring hourly employees working the closing shift at the restaurant to perform their duties off-the-clock).

The Plaintiffs argue that the common policies and practices the proposed collective are subject to include: 1) automatic meal break deduction policy and accompanying work break policy, which result in lack of bona fide meal breaks; and 2) the seven minute rule and over time policy, which result in off-the-clock work.   (Doc. #68.)  Plaintiffs allege that these policies led to a common practice and pattern of failing to pay employees for all hours worked and also a practice of incentivizing leadership to discourage compliance with written timekeeping and break policies, such as filling out time correction forms.  (Doc. #83.)  Plaintiffs argue that although the seven minute rule and the automatic meal break deduction policy are not facially illegal policies, they lead to unlawful practices by the Defendants.  (Doc. #83, at 8.)

Defendants state in response that all of Defendants' policies are FLSA compliant, and there was no unlawful policy common to all RNs and Psych Techs requiring them to work during meal breaks or off-the-clock.  (Doc. #101.)  Defendants also provide deposition and/or affidavits from other employees (including Supervisor Larry Moncrief, Lead Psych Tech Charles Jones, and Floor Nurse Bridgett Frisk) testifying that they were able to regularly enjoy uninterrupted meal breaks; on the rare times that they missed meal break, they were compensated; they were not required to work off-the-clock; and Defendants were adequately staffed.  (Doc. #7, at 15-18.)

### i. Meal Break Policy

Defendants' facility has an automatic time deduction policy for meal breaks whereby employees' time sheets are automatically deducted 30 minutes to account for their meal break without a need to clock in and out.  (Doc. #68, at 9.)  Also, the work break policy pertaining to meal breaks states that employees "are permitted a non-compensable meal break of at least 30

minutes, workload permitting." (Doc. #68, at 10.) Per the written policies, employees should also be completely relieved from duty during their break, and if they are not, they will be compensated for the time spent performing work duties. (*Id.*) These policies are similar to what is required under 29 C.F.R. § 785.19 of the FLSA for a bona fide meal period.

The Fifth Circuit uses a "predominant-benefit test" to evaluate whether an employee is provided a bona fide meal period as required by the FLSA. *See Dean v. Akal Sec., Inc*., 3 F.4th 137, 144 (5th Cir. 2021). The factors for this test include: "[1] whether the employees are subject to real limitations on their personal freedom which inure to the benefit of the employer; [2] whether restrictions are placed on the employee's activities during those times, such as whether or not the employee may leave the work site if he chooses; [3] whether the employee remains responsible for substantial work-related duties; and [4] how frequently the time is actually interrupted by work-related duties." *Id.* "The overall goal of the analysis is to determine whether the employee can use the time effectively for his or her own purposes." *Id.*

Plaintiffs argue that Defendants' policies coupled with staffing issues, constant interruptions from doctors or other staff, or emergencies lead to a nonexistent or very rare bona fide meal period. (Doc. #68, at 10-11.) With regard to staffing, Plaintiffs provided deposition testimony from Plaintiffs and opt-ins asserting that Defendants had a practice of being chronically understaffed forcing employees to incur unplanned/incidental overtime due to patient care responsibilities that they were then discouraged from claiming through the overtime policy, which requires pre-approval, or authorization by their supervisors. (Doc. #102, at 6-7, 9.) Plaintiffs assert that the clinical director and administrator directly discouraged employees from

filling out time correction forms[3] or claiming time worked when employees were not completely relieved during meal breaks.  (*Id.* at 10-11, 19-20)

For example, Plaintiffs provide deposition testimony from both Plaintiffs and two opt-ins showing that Clinical Director Eason at the facility made statements at staff meetings discouraging employees from turning in meal break exception forms stating, "I do not want you turning in a lot of meal break exception forms," and that "if you got a chance to eat, you got a lunch break."  (Doc. #102, at 4-5.)  Plaintiffs assert this is an example of the "practices" at the facility that provide a "factual nexus" warranting collective treatment.  (*Id.*)

Defendants argue that staffing issues were sporadic and meal break difficulties varied based on the types of patients and acuity on each unit.  (Doc. #78, at 22.)  Defendants state these individualized circumstances show that Plaintiffs cannot establish a policy *common* to all proposed opt-in plaintiffs and rely on the *Cotton-Thomas* case for support.  (Doc. #101, at 10-12.)

In *Cotton-Thomas v. Volvo*, all hourly-paid employees at a parts distribution center were subject to automatic 30-minute meal break deductions and claimed unpaid overtime when they were not actually relieved of their duties during this period.  *Cotton-Thomas v. Volvo Grp., N. Am. LLC*, No. 3:20-CV-113-GHD-RP, 2021 WL 2125003, at *1 (N. D. Miss 2021).  The court ultimately held that the plaintiff did not offer evidence of similar job duties, similar work settings, nor how *frequently* they worked through meal breaks or the *cause* for missing lunch breaks, and therefore, there were too many individualized circumstances for a collective action. *Id.* at *2-3.

---

[3]  Defendants' time-keeping system prior to 2018 was called HMS and required employees to submit an exception form to their supervisor for missed meal breaks.  (Doc. #68, at 11.)  However, after 2018, Defendants implemented Kronos for time reporting, which provides a one-click system certifying whether or not a meal break was taken. (*Id.*)

Defendants assert that here there is, likewise, no evidence of a uniform number of times or dates when meal breaks were missed or interrupted by the RNs or Psych Techs. Plaintiffs note that their proposed collective is more narrowly defined than that in *Cotton-Thomas*. (Doc. #83, at 6-7.) Moreover, Plaintiffs allege that a *frequency* and *cause* has been offered into evidence. Specifically, Plaintiffs assert regular interruptions on at least a weekly, if not daily basis, and the cause for interrupted/missed meal breaks is understaffing, a policy prohibiting unapproved overtime, and a practice of discouraging requests for time corrections. (Doc. #102, at 6-8.) The undersigned agrees and finds this case distinguishable.

Defendants rely on Plaintiff Roberts' deposition testimony to counter claims of understaffing for two years of her employment. (Doc. #101, at 12-14.) However, Opt-in Plaintiffs Bajika, Thompson, and Parkerson testified that staffing issues were prevalent and caused missed meal breaks almost daily, and they reported this issue to management. (*Id.* at 18-22.) Floor Nurse Fisk also testified that there were staffing issues. (*Id.*; Doc. #78-4, at 102-108.)

Defendants also respond to overtime claims stating that Plaintiff Roberts claimed six missed meal breaks in the last five months of her employment under the Kronos system, for which she was paid and did not receive any discipline for claiming. (*Id.* at 15.) They also note that Plaintiff Espree turned in at least one meal claim on Kronos, and she admits that she was never disciplined for turning in meal claims. (*Id.* at 17.) In addition, Defendants point to testimony from Supervisor Moncrief, Lead Psych Tech. Jones, and Floor Nurse Fisk stating that they rarely missed meal breaks. (Doc. #78, at 15-17.) While the court recognizes there are disputed facts, resolution of these issues is better left to a later determination as to the merits. *See Garcia-Alvarez v. Fogo De Chao Churrascaria (Pittsburgh) LLC*, No. 4:21-CV-00124, 2022 WL 2119542, at *5 (E.D. Tex. June 13, 2022) ("[D]istrict courts in the Fifth Circuit agree that

the similarly situated determination is not an opportunity for courts to assess the merits of the claim by deciding factual disputes or making credibility determinations.") (collecting and citing cases on this issue).

Plaintiffs point to other meal break cases where the court found the proposed collective of nurses "similarly situated," but most of these cases were all "conditionally" certified pre-*Swales* under a more lenient standard with less discovery than *Swales* and were then settled before step two of the *Lusardi* test.  (Doc. #83, at 7.)

However, very recently, in *Hamm v. Acadia Healthcare Co., Inc.*, a district court certified a proposed collective of patient care employees including nurses, nursing staff, nursing assistants, nurse aides, technicians, clerks, nonexempt therapists, and other non-exempt employees similarly situated.  *Hamm v. Acadia Healthcare Co., Inc.*, No. 20-1515, 2022 WL 2713532, at *5 (E.D. La. July 13, 2022).  Defendant's policy stated, "a meal break may be interrupted by management when it is necessary for employees to return to work" and "if it becomes necessary for employees to remain on duty during their meal breaks or if they are called back to work by management, employees will be paid for the entire meal break."  *Id.* at *3.  The Plaintiff alleged that as a result of the Defendants' meal break policy, the proposed collective was subject to a "common and violative policy whereby their meal breaks were subject to interruption at any time and were therefore 'predominantly for the benefit of the employer.'"  *Id.* at *3.

The *Hamm* court analyzed the case under *Swales* using the three factors for determining whether the collective was similarly situated—finding it was—and noted the *Bernard* case, which evaluated a meal break case under the predominant benefits test.  *Id.* at *3.  In *Bernard*, the Fifth Circuit considered FLSA violations for a collective of maintenance workers.  *Bernard*

*v. IBP, Inc. of Nebraska*, 154 F.3d 259, 266 (5th Cir. 1998). The plaintiffs alleged that they were interrupted frequently by supervisors to repair equipment at the plant, and even when their breaks were not interrupted, they were required to stay on the premises. *Id.* at 262-263. Defendants responded stating that the plaintiffs were free to leave the plant during their meal breaks, and it was only on rare occasions that supervisors interrupted their meal breaks. *Id.* They also stated that plaintiffs could refuse to allow interruptions of their meal break to perform maintenance duties without them being subjected to any adverse consequences. *Id.* The court found the evidence sufficient to support the jury's verdict that the meal breaks were predominately for the benefit of the employer thereby violating the FLSA. *Id.* at 265.

Comparatively, the *Hamm* court found that the plaintiffs "alleged" a FLSA violative policy where they assert that all of their meal breaks are subject to possible interruption, which requires them to stay on duty for their employer. *Hamm*, 2022 WL 2713532, at *3-4. Likewise, in this case, Plaintiffs allege that their meal breaks were interrupted on a daily basis, they were constantly on duty, and if they tried to leave the premises, many times, they were called to return. (Doc. #102, at 5 n.6.) Further, Defendants' policy only allowed for meal breaks where the employees' "workload permit[ed]," subjecting them to possible interruptions every day. The undersigned finds the *Hamm* case similar and persuasive.

Similarly, in *Willis v. Behar*, a Houston district court considered a collective action of nurses claiming unpaid overtime for unpaid meal breaks and a rounding policy with a 7 minute rule at the strict step two of *Lusardi*. *Willis v. Behar*, 2015 WL 12942481 (S.D. Tex. 2015.) In this case, after the parties conducted extensive discovery, the defendant moved to decertify the collective arguing the plaintiffs were not similarly situated and there were individualized inquiries or defenses. *Id.* at *2-3. The court found that the plaintiffs shared common facts

relating to defendants' control of their meal breaks for defendants' predominant benefit, including—all members worked through their meal or had the meal break interrupted by work demands—and therefore, allowed the collective action to proceed.  *Id.* at *7-8.  In addition, the court found it immaterial that some collective action members signed and acknowledged defendants' policy allowing compensation for missed meal breaks where the plaintiffs claimed that defendants intimidated and shamed employees to dissuade them from utilizing the policy. *Id.* at *7.  Again, while the facts are not exactly the same as our instant case, the undersigned finds this case is persuasive.

ii.  Seven Minute Rule – Off-the-Clock Work

RNs and Psych Techs work 12-hour shifts either from 7 a.m. to 7 p.m. or from 7 p.m. to 7 a.m.; however, with the non-compensable automatic meal break deduction, these employees must add 15 minutes to the beginning and end of each shift making their actual shifts 6:45 to 7:15.  (Doc. #68, at 8-9.)  The seven minute rule comes into play to prevent unapproved overtime because of a rounding policy where time is rounded up or down by 15 minutes depending on the time—with 7 minutes being the marker to round down.  (*Id.* at 89, 15-16.)  Accordingly, an employee should arrive between 6:38-6:52 and leave between 7:08-7:22 to prevent incurring any overtime.  (*Id.*)  Defendants' overtime policy also states that overtime must be requested and approved in advance.  (*Id.* at 10.)  Rounding policies are addressed in 29 C.F.R. § 785.48(b), which states that they are allowed "provided that [the policy] is used in such a manner that it will not result, over a period of time, in failure to compensate the employees properly for all the time they have actually worked."

Plaintiffs assert that these polices lead to a practice of routine off-the-clock work because employees were often instructed to clock out within seven minutes of their shift ending (or face

discipline), but had to continue working to finish their charts, change soiled linens, change patients' clothing, or finish other work tasks.  (*Id.* at 16.)  Plaintiffs further contend that Defendants knew that RNs and Psych Techs were working off-the-clock because it was reported, discussed, and seen.  (Doc. #102, at 14.)

Defendants assert that if supervisors or managers were encouraging employees to arrive early to work or stay late working off-the-clock hours, they were "acting rogue." (Doc. #78, at 25.)  Defendants submitted testimony from other employees asserting they never worked off-the-clock.  (*Id.*)  Again, Defendants claim that the evidence shows that individual inquires predominate their claims, because the facts and employment settings vary by unit and shifts. (Doc. #86, at 4-7.)  Defendants note that 6 out of the 8 RNs and Psych Techs before the court (out of a potential 174 total collective) have not claimed pre-shift off-the-clock work.  (Doc. #101, 4-5.)  Defendants point out that for post-shift off-the-clock work, Roberts is the only RN to claim to have done so, and it was only once every two weeks to work on reports.  (*Id.* at 6-7.) Also, only 2 of 4 Psych Techs before the court claim to have performed off-the-clock work approximately twice a week to make up beds and change patients' clothes.  (*Id.* at 7-9.)  The undersigned finds that Plaintiffs are not required at this stage to marshal evidence from a majority of the proposed collective. *Garcia-Alvarez v. Fogo De Chao Churrascaria (Pittsburgh) LLC*, No. 4:21-CV-00124, 2022 WL 2119542, at *6 (E.D. Tex. June 13, 2022) (finding evidence from only two out of three opt-ins did not preclude whether notice should be sent to other potential collective action members.)

Plaintiff relies on two off-the-clock cases that were decided post-*Swales*.  *See Loy v. Rehab Synergies, LLC*, No. 7:18-CV-4, 2021 WL 3931926 (S.D. Tex. Sept. 2, 2021); *Aboin v. IZ Cash Inc.*, No. 4:20-CV-03188, 2021 WL 3616098, at *4 (S.D. Tex. June 29, 2021).  In *Loy*,

plaintiffs alleged FLSA violations for off-the-clock work performed by therapists at a medical facility due to the defendant's 90% productivity requirements and their knowledge and encouragement of off-the-clock work. *Loy v. Rehab Synergies, LLC*, No. 7:18-CV-4, 2021 WL 3931926 (S.D. Tex. Sept. 2, 2021). The productivity requirement required an employee to bill, on average, 90% of their time to direct patient care leaving an inadequate amount of time left for all other duties, which had to be completed off-the-clock. *Id.* at *10. The court held that the "collective effect" of the productivity policy and defendant's lack of enforcement of the record-keeping policy (which were in tension with each other) as they relate to encouraging off-the-clock work is an issue of fact common to all plaintiffs. *Id.* at *11. The court stated that 'the presence of an official policy against off-the-clock work does not defeat certification if the plaintiff provides substantial evidence that regular off-the-clock work is occurring." *Id.* at *8 (citing *Falcon v. Starbucks Corp.*, 580 F. Supp. 2d 528, 536 (S.D. Tex. 2008) (conditionally certifying a collective class despite the fact that Starbucks had an official "time worked is time paid" policy) and *Johnson v. RGIS Inventory Specialists*, 554 F. Supp. 2d 693, 709 (E.D. Tex. 2007) ("When an employer knows or has reason to believe that an employee is working for the employer's benefit, the time spent by the employee is work time, even if the work was not requested."). Thus, the court found the proposed collective similarly situated. *Id.* at 12. It also found that the need for individual overtime and damages calculations did not impede proceeding as a collective action. *Id.*

In *Aboin*, the court approved a collective action of similarly situated tellers who worked for check cashing locations based upon claims of unpaid overtime for pre- and post-shift off-the-clock work. *Aboin v. IZ Cash Inc.*, No. 4:20-CV-03188, 2021 WL 3616098, at *4 (S.D. Tex. June 29, 2021). The defendant had a policy and practice of requiring the tellers to balance their

cash box at the beginning and end of their scheduled shift even if extra hours were needed to do so. *Id.* Plaintiff claimed that the tellers were not paid for this time. *Id.* The defendant alleged, however, that tellers were paid for the time they arrived and they closed ten minutes early to balance their cash boxed at the end of the shift and were paid if they exceeded the allotted time. *Id.* at *5. As such, according to the defendant, the policy was not facially illegal or violative of FLSA. *Id.* To counter this contention, the plaintiff presented evidence (through a self-proving affidavit) that the policy resulted in a practice of denying the tellers overtime wages. *Id.*

Defendants argue these cases both had onerous productivity requirements which uniformly *required* work[4] that went uncompensated, whereas, in this case, Plaintiffs can only show that 3 out of 165 employees took it upon themselves to work extra time without pay. (Doc. #86, at 9-10.) Likewise, Plaintiffs respond that "despite employing hundreds of RNs and Psych Techs at the facility, Defendants only produced affidavits from two of them, Jones and Moncrief." (Doc. #83, at 9 n28.) The court in *Aboin* stated that affidavits from potential opt-in plaintiffs is probative, but not required, and it allowed the case to proceed as a collective action based predominantly on the plaintiff's testimony regarding the "similarly situated" inquiry and despite controverting affidavits provided by the defendant. *But see Berridge v. Pediatric Home Healthcare*, LLC, No. SA-20-CV-01025-XR, 2021 WL 4083407, at *2 (W.D. Tex. Sept. 8, 2021) ("[T]ypically a showing is necessary that at least a few similarly situated individuals seek to join the lawsuit."). Further, as stated previously, it is not the number of opt-ins who supply

---

[4] These cases had policies that required work during regular work hours, but the employees found it impossible to get that work done without incurring overtime. Arguably, in this case, Defendants' meal break policy similarly *requires* work, because it only allows for an uninterrupted meal break—"workload permitting" which, in many cases as alleged by Plaintiffs, did not occur. (Doc. #68, at Ex. 5.) In addition, Plaintiffs assert that due to Defendants' understaffing practice/pattern and policy against overtime, they were required to work off-the-clock prior to their shift and after their shift to complete all of their tasks. (*Id.* at 16.)

evidence regarding the Defendants' policy or practice, but whether the issues may be decided as a collective without a highly individualized inquiry.

### iii.  Are Defendants' policies and practices violative of the FLSA?

"Put bluntly, Plaintiffs must demonstrate a common plan to violate the law."  *Avila v. SLSCO, Ltd.*, No. 3:18-CV-00426, 2022 WL 784062, at *10 (S.D. Tex. Mar. 15, 2022), *R. & R. adopted*, No. 3:18-CV-00426, 2022 WL 980273 (S.D. Tex. Mar. 31, 2022).  Defendants argue that their policies were all FLSA compliant, and there was no common policy that required employees to work through lunch or off-the-clock thereby defeating the requirement for a collective action.

The court's previous order denying Plaintiff's motion for a collective action relied on *Kelly* and held that, "Roberts has not sufficiently demonstrated a policy common to all proposed opt-in plaintiffs requiring them to work during unpaid meal breaks."  (Doc. #50, at 13.)  It also found that "Roberts does not provide any evidence of a company-wide policy or practice of Baptist that required patient care employees to arrive early or stay late to work without being compensated for such time."  (*Id.* at 15.)

In *Kelly*, the court decertified a FLSA collective at *Lusardi's* second stage because: the plaintiffs did not provide enough factual support that an FLSA violation had actually occurred under a common plan that affected all class members; individualized evidence for each plaintiff was necessary to prove each plaintiff performed unpaid work; and the individualized nature of the factual questions weighed against continuing as a class based on procedural fairness concerns.  *Kelly v. Healthcare Servs. Grp.*, No. 2:13-CV-00441-JRG, 2015 WL 3464131, at *4, 2015 U.S. Dist. LEXIS 70591 at *10-15 (E.D. Tex. June 1, 2015).  The court held that a rounding policy is "insufficient by 'itself' to retain certification of an FLSA collective," because

the question for FLSA liability is whether the rounding policy "was applied in such a manner that it actually resulted in unpaid work." *Id.* at *5.

In this case, in Plaintiffs' motion to reconsider, they point to an overall plan, pattern, or practice that Defendants imposed aside from just their lawful written FLSA policies. Plaintiffs assert that even if Defendants' written policies are not per se illegal, it is the combination of all of the policies and Defendants' practices and training, which makes them violative of the FLSA and warrant a collective action in this case.

Defendants' meal break policy states that employees are permitted a 30-minute meal break, "workload permitting," and if they perform any work during their meal break, they will be compensated toward their total hours worked. (Doc. #68-1, Ex. 5.)

The seven minute rule states that employees will not start work more than 7 minutes prior to the time assigned for duty and must leave the work area within 7 minutes after completion of shift—all to avoid incurring overtime due to the quarter hour rounding policy. (*Id.* at Ex. 4.)

Defendant's overtime policy states "every effort is made to avoid or minimize overtime," but "occasionally overtime will become necessary because of workload demands, emergencies, and/or disasters." (*Id.* at Ex. 4.) However, it also states that "overtime must be requested and approved in advance," and if not done so, employees "will be subject to disciplinary action." (*Id.* at Exs. 4, 9.) In addition, it is Defendants' policy that employees "may not decide on their own to work overtime *except in emergencies* or under specific direction from their supervisor." (*Id.* at Ex. 4.) There does not seem to be a written policy dispensing with pre-approval for overtime in the situation of "workload" (non-emergency) causing a missed/interrupted meal break unless a supervisor specifically directs the employee to perform certain work in lieu of their meal break.

In addition, employees cannot reduce their overall time worked by taking compensatory time, nor can they "volunteer to work overtime hours without being paid overtime wages." (*Id.*) Plaintiffs also provided evidence that Defendants' practices dissuade employees from claiming overtime due to missed/interrupted meal breaks or other off-the-clock work. Plaintiffs allege that it is these polices combined with the alleged practices by Defendants, including constant interruptions, chronic understaffing, and supervisors' discouragement of unapproved overtime and the claiming of same, that led to a pattern of FLSA violations. (Doc. #102, at 6-16.)

Similarly, in *Falcon v. Starbucks*, the court found that the plaintiffs made a strong showing that Starbucks' general policy of requiring managers to perform job duties that could not easily be completed within 40 hours while, at the same time, strongly discouraging overtime, failing to increase labor budgets, and basing bonuses, at least in part, on labor hours created an environment that at least strongly motivated managers to commit the alleged FLSA violations. *Falcon v. Starbucks Corp.*, 580 F. Supp. 2d 528, 536 (S.D. Tex. 2008). Therefore, the court found the proposed collective similarly situated under the stricter decertification stage/step two of *Lusardi* despite an official, lawful written policy that prohibited off-the-clock work and a lawful "time worked is time paid" policy. *Id.* The court held that a lawful policy, *in combination with other factors*, which leads to a consistent pattern of FLSA violations can support a finding that plaintiffs are similarly situated for purposes of section 216. *Id.*

In consideration of the above cases, including the *Hamm* and *Willis* cases, the undersigned finds that Plaintiffs have shown a common policy, practice or plan. Therefore, this factor weighs in favor of finding a collective action and sending notice pursuant to the FLSA.

### 2. Defendants' Defenses

For the second factor, the court looks to whether the defendant's defenses are so individualized that it is inefficient or unmanageable to proceed with a representative class. *Trottier v. FieldCore Serv. Solutions, LLC*, No. 2:20-CV-186, 2022 WL 658765, *8 (N.D. Tex. March 4, 2022).

Defendant argues that it has the following individual defenses and denials: 1) statute of limitations; 2) HMS time system claims should be barred for some individuals; 3) whether each individual received a bona fide meal period each shift under the four factor test; 4) whether each individual received a bona fide meal period shift-by-shift; 5) whether, when, and how often each individual was interrupted during meal break; 6) whether, when and why each individual did not report a missed or interrupted meal break through HMS exception forms; (7) whether and why individuals did not report missed or interrupted meal breaks through Kronos certifications; (8) which charge nurses, supervisors or managers required or requested FLSA violations contrary to Defendants's policies, what they required or requested, and of whom; (9) whether the same ethical considerations to which Plaintiffs point under ANA standards apply to unlicensed Psych Techs; (10) if, when, how often, and why individuals worked without pay before or after shifts (and even whether what they did was considered "work" under the law); (11) whether Defendants' rounding policy was applied to each individual "in such a manner that it actually resulted in unpaid work; (12) which individuals received overtime pay, for what periods, and what it covered; (13) whether each individual actually worked enough hours pay period-by-pay period to qualify for overtime pay under the FLSA;  (14) whether each individual already claimed a meal break exception or was already compensated for all work; (15) whether, "understaffing" and "overwork" claims by individuals occurred on each shift and unit at all,

22

much less on specific shifts and units; and (16) whether and to whom individuals complained about the time and pay practices alleged here, and if not, why not.  (Doc. #78, at 28.)

Plaintiffs argue in response that Defendants are merely asserting fact issues that should be determined at trial, and most of these defenses are damages inquiries that do not bar a collective action.  (Doc. #83, at 8.)

Even though a "defense may require specific factual inquiries about each Plaintiff," when the Defendant asserts the defense against each Plaintiff, "collective treatment is less problematic." *Segovia v. Fuelco Energy, LLC*, No. SA-17-CV-1246-JKP, 2021 WL 2187956, at *10 (W.D. Tex. May 28, 2021) (quoting *Snively v. Peak Pressure Control, LLC*, 314 F. Supp. 3d 734, 742 (W.D. Tex. 2018).  Moreover, these defenses are similar to those asserted in *Loy*, where the court held that if the defenses are largely applied to plaintiffs' common claims, this factor weighs in favor of a collective action.  *See Loy*, 2021 WL 3931926, at *13.  Additionally, in *Falcon*, the court, citing various unpaid overtime case examples, found that defendants may raise their defenses to off-the-clock claims by examining representative plaintiffs and presenting its own evidence at trial, and the court may also bifurcate liability and damages in the interest of judicial economy if necessary.  *Falcon*, 580 F. Supp. 2d at 540-541.  With regard to damages, courts have held that differences in how many overtime hours each plaintiff worked is not relevant to liability, and therefore does not require decertification.  *Clark v. Centene Co. of Tex., L.P.*, 44 F. Supp. 3d 674, 690 (W.D. Tex. 2014), *aff'd*, 656 F. App'x 688 (5th Cir. 2016); *Maynor v. Dow Chem. Co.,* 671 F. Supp. 2d 902, 935 (S.D. Tex. 2009) ("The need for individual plaintiffs to establish the amount of uncompensated time does not defeat certification."). Consequently, this factor weighs in favor of finding the plaintiffs similarly situated.

23

### 3. Fairness and Procedural Considerations

Finally, the court considers matters of fairness and procedure – the third *Swales* factor. For this factor, courts look to the primary objectives of FLSA collective actions – "(1) to lower costs to the plaintiffs through the pooling of resources, and (2) to limit the controversy to one proceeding which efficiently resolves common issues of law and fact that arise from the same alleged activity." *Snively*, 314 F. Supp. 3d at 743. Courts also consider whether they "can coherently manage the class in a manner that will not prejudice any party." *Id.* (quoting *Mahoney v. Farmers Ins. Exch.*, No. 4:09-CV-2327, 2011 WL 4458513, at *10 (S.D. Tex. Sept. 23, 2011)).

Plaintiffs argue that the proposed narrowed collective eliminates court management concerns because all of the proposed members are from the same department, use the same timekeeping software, and there are only two job descriptions, two sets of duties, and they all have the same supervisor hierarchy.  (Doc. #68, at 23.)  Defendants respond alleging that it is not an efficient or fair procedure to try all of the factual questions and defenses raised in one trial. (Doc. #78, at 29.)

The undersigned finds that proceeding with a collective suit in this matter would lower the parties' costs and allow the court to resolve the common issues discussed herein. Consequently, this last factor weighs in favor of finding the collective similarly situated.

### B. Notice

After the court determines whether plaintiffs are sufficiently similarly situated, "federal judges have the power to authorize the sending of notice to potential FLSA class members to inform them of the action and to give them opportunity to participate by opting in." *Lopez-Gonzales*, 2021 WL 3192171, at *8 (citing *Tillis v. Glob. Fixture Servs.*, No. 4:19-CV-01059,

2020 WL 1443490, at *6 (S.D. Tex. Mar. 23, 2020)).   A collective action depends "on employees receiving accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate." *Hoffmann-La Roche v. Sperling*, 493 U.S. 165, 170 (1989). Therefore, the court has the authority to manage the preparation and distribution of notice in order to ensure that it is "timely, accurate, and informative." *Id.* at 172.

Plaintiffs argue that notice pursuant to 29 U.S.C. § 261(b) may be sent utilizing a third-party administrator and should be sent by U.S. Mail, email, electronically on a website, and by conspicuously posting a notice in Defendants' common break room areas giving them an opportunity to opt into the collective action to pursue their FLSA claims.  (Doc. #68-2.)  They assert that the notice should be addressed to the following:

> All current and former hourly, non-exempt employees employed by Defendants as Registered Nurses ("RNs") and as Psych Techs at the Baptist Behavioral Health Center at any time from March 4, 2017 until resolution of this action (the "Collective").

Plaintiffs also request a 90-day response period from the date of the notice for opt-ins to return their signed consent, and further request that they be allowed to send a reminder at 45 days.   In addition, Plaintiffs request that Defendants produce an updated list of the names and contact information of the collective.  To the extent Defendants have contact information that meets this definition that has not been produced to Plaintiffs, Defendants are ORDERED to update their list and submit it to Plaintiffs within seven (7) days of the district judge entering an order adopting this report and recommendation.

The undersigned agrees with the proposed collective definition, with the exception of the date provided.  The parties note a disagreement in their filings regarding this date and whether equitable tolling should apply to toll the statute of limitations for the opt-in plaintiffs.  That issue

has not been fully briefed for the court, so it will not make findings or a recommendation as to that issue at this time.

Furthermore, Plaintiffs did not provide a proposed notice, and they state in their reply that they request an opportunity to confer with Defendants and agree on a notice plan.  Consequently, the parties are ORDERED to confer and submit a copy of their agreed upon notice to the court within seven (7) days of an order adopting this report and recommendation.  The proposed notice should address the issue of the statute of limitations for the opt-in plaintiffs. If the parties cannot agree on a proposed notice, they should each file a proposed notice with legal support within seven (7) days of an order adopting this report and recommendation.

## V. RECOMMENDATION

The undersigned recommends that Plaintiffs' Motion to Reconsider (doc. #68) be granted for the reasons stated herein and allow this suit to proceed as a collective action with notice to be sent pursuant to the FLSA pending approval of such notice by the court.

## VI. OBJECTIONS

Pursuant to 28 U.S.C. § 636(b)(1)(c), each party to this action has the right to file objections to this report and recommendation.  Objections to this report must: (1) be in writing, (2) specifically identify those findings or recommendations to which the party objects, (3) be no longer than eight (8) pages, and (4) be served and filed within fourteen (14) days after being served with a copy of this report.  *See* 28 U.S.C. § 636(b)(1)(c) (2009); FED. R. CIV. P. 72(b)(2); E.D. TEX. LOCAL R. CV-72(c).  A party who objects to this report is entitled to a *de novo* determination by the United States district judge of those proposed findings and recommendations to which a specific objection is timely made.  *See* 28 U.S.C. § 636(b)(1) (2009); Fed R. Civ. P. 72(b)(3).

A party's failure to file specific, written objections to the proposed findings of fact and conclusions of law contained in this report, within fourteen (14) days of being served with a copy of this report, bars that party from: (1) entitlement to de novo review by the United States district judge of the findings of fact and conclusions of law, *see Rodriguez v. Bowen*, 857 F.2d 275, 276–77 (5th Cir. 1988), and (2) appellate review, except on grounds of plain error, of any such findings of fact and conclusions of law acceptedd by the United States district judge, *see Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, at 1428–29 (5th Cir. 1996) (en banc).

**SIGNED this the 9th day of August, 2022.**

_____
Christine L Stetson
UNITED STATES MAGISTRATE JUDGE