**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION**

| | | |
|---|---|---|
| **LINDA ROBERTS,** *et al.*, | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | |
| **v.** | § | |
| | § | **CIVIL ACTION NO.  1:20-CV-00092-MAC** |
| **BAPTIST HEALTHCARE SYSTEM,** | § | |
| **LLC,** *et al.*, | § | |
| | § | |
| **Defendants.** | § | |

## REPORT AND RECOMMENDATION ON PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

Pursuant to 28 U.S.C. § 636, the Federal Rules of Civil Procedure, and the Local Rules for the Eastern District of Texas, this matter has been referred to the undersigned for pre-trial management.  Now before the undersigned magistrate judge for review and submission of a report with recommended findings of fact and conclusions of law is Plaintiffs' Motion for Class Certification, Defendants' Response thereto, and the accompanying Reply and Sur-Reply. (Docs. #105, #108, #114, #119.)

## I.  BACKGROUND

On March 4, 2020, Plaintiff, Linda Roberts, a registered nurse (RN), asserted an action against Baptist Defendants (her former employer) on behalf of herself and others similarly situated for violations of the Fair Labor Standards Act (FLSA) and Texas state law claims of quantum meruit for unpaid wages.  (Doc. #1.)  Roberts moved for a collective action pursuant to the FLSA, which was initially denied by the court.  (Doc. #50.)  After revising the proposed collective (to include only RNs and psychiatric technicians (psych techs) employed at one of Defendants' facilities) and adding a named plaintiff, Elizabeth Espree, a psych tech, Plaintiffs

filed a Motion to Reconsider, which was granted on September 4, 2022, giving them the right to proceed with a collective action on the federal FLSA claims. (Doc. #124.)

Now, Plaintiffs seek to proceed with a class action pursuant to Federal Rule of Civil Procedure 23(a) and 23(b)(3) for their Texas state law claims of quantum meruit based upon unjust enrichment. More specifically, they assert quantum meruit claims for unpaid meal breaks and off-the-clock periods wherein valuable services were performed and for which they were not compensated. (Doc. #54, at 18.) Plaintiffs allege a putative class of:

> All current and former hourly, non-exempt registered RNs and Psych Techs employed by Defendants at the Facility at any time during the Class Period.

(Doc. #105, at 1.) The class period asserted in the Plaintiffs' First Amended Complaint is four years preceding the filing of the Original Complaint (March 4, 2020)—from March 4, 2016, to the resolution of this action. (*Id.*; Doc. #54, at 18.)

## II. DISCUSSION

### A. *Preemption of State Law Claims*

The basis for the Plaintiffs' class action is state law claims of quantum meruit. "Recovery in quantum meruit will be had when nonpayment for the services rendered would result in an unjust enrichment to the party benefitted by the work." *MetroplexCore, L.L.C. v. Parsons Transp., Inc.*, 743 F.3d 964, 975 (5th Cir. 2014). "To recover under quantum meruit, a claimant must prove that: 1) valuable services were rendered or materials furnished; 2) for the person sought to be charged; 3) which services and materials were accepted by the person sought to be charged, used and enjoyed by him; 4) under such circumstances as reasonably notified the person sought to be charged that the plaintiff in performing such services was expecting to be paid by the person sought to be charged." *Vortt Expl. Co. v. Chevron U.S.A., Inc.*, 787 S.W.2d 942, 944 (Tex. 1990).

Defendants argue that many of the proposed claims included in Plaintiffs' quantum meruit cause of action are preempted by the FLSA. Defendants allege that Plaintiffs have requested a "global class" of RNs and psych techs that encompasses more than just the pure "gap time" quantum meruit claims previously allowed by the court's order (doc. #22) denying dismissal, including expired FLSA claims and "overtime gap time" claims. (Doc. #119, at 1.)

On November 30, 2020, Judge Marcia Crone entered an order denying the Defendants' Motion for Partial Dismissal on Plaintiffs' state law claims. (Doc. #22.) Defendants argued that Plaintiffs' state law claims are preempted by the FLSA. Plaintiffs asserted that their state law claims are not preempted because they are seeking back wages that do not overlap with FLSA's overtime provisions, including "gap time" claims for regular, non-overtime wages owed and overtime claims that fall outside of the FLSA's statute of limitations. The court held that gap time claims are not cognizable under the FLSA and therefore, "to the extent Roberts seeks recovery for "gap time" not covered by the FLSA overtime and minimum wage standards, her state common law claims are not preempted by the FLSA." (Doc. #22, at 12.) The court also stated that it "expresses no opinion as to whether Roberts's state law claims can extend to overtime claims that fall outside the FLSA's statute of limitations." (*Id.* at 12 n2.)

In Plaintiffs' current pending Motion for Class Certification, they refer to expired statute of limitations FLSA claims (doc. #105, at 12) and also to claims for hours worked in excess of forty hours in a workweek in which they seek 1.5 times their hourly rate (*id.* at 14-15). In Plaintiffs' Reply, they assert, "[t]o be clear, Plaintiffs seek recovery of the Putative Class Members' (straight time) hourly rate for all hours worked off-the-clock, including those in excess of 40 hours in a workweek." (Doc. #114, at 4.) Plaintiffs argue that a distinction is made between seeking overtime wages at a regular rate versus seeking overtime wages at the "statutory

overtime premium rate" of time and a half, with only the latter being preempted.[1]  This is contrary to their assertion in their original motion seeking "1.5 times" the hourly rate.

Plaintiffs rely on *Karna v. BP Corp. North America, Inc.,* in arguing this distinction.  11 F. Supp. 3d 809 (S.D. Tex. 2014).  In *Karna*, the court held that the plaintiff's quantum meruit claim was not preempted by the FLSA but was barred by the existence of a valid written contract.  *Id.*  The plaintiff sued his employer under the FLSA for unpaid hours worked in excess of 40 hours at the premium rate and simultaneously brought a quantum meruit claims seeking to recover the base rate for each hour worked.  *Id.* at 815.  The court found the quantum meruit claim was not a violation of FLSA and therefore not preempted.  *Id.*  It stated further that he could not recover under both claims but if he was ineligible for the overtime rate, he could recover the base rate.  *Id.*  This reasoning was based upon reliance on *Anderson v. Sara Lee Corp*, a Fourth Circuit case from 2007, which held that state law claims of negligence and fraud were preempted because they were grounded in FLSA violations.  *Id.* (citing *Anderson v. Sara Lee Corp,* 508 F.3d 181 (4th Cir. 2007)).  The court found that Karna's quantum meruit claim was not grounded in a FLSA violation because he did not allege that he was not paid the premium overtime rate but rather was not paid at all for those hours, which does not allege a claim for minimum wages or the overtime rate.  *Id.* at 816.  Thus, this was a valid alternative legal theory for recovery of lost wages if he were deemed exempt from the FLSA provisions.  *Id.* The court recognized that this was not a classic pure "gap time"[2] claim, but rather the overtime

---

[1] The FLSA requires a covered employer to pay a covered employee one and one-half times the employee's regular rate for all hours worked in excess of 40 hours per week, regardless of whether the employee is paid hourly, piece-rate, or under some other compensation system.  *See* 29 U.S.C. § 207(a).

[2] A "gap time" claim is "a claim seeking compensation for hours worked in a week that are not in excess of forty, when the average wage paid over all hours worked fewer than forty is not below minimum wage."  *Karna*, 11 F. Supp. 3d at 816 (citing *Floridia v. DLT 3 Girls, Inc.*, No. 4:11-cv-3624, 2013 WL 127448, at *5 (S.D. Tex. Jan. 9, 2013)).

equivalent of such and stated that both types of claims were not cognizable under the FLSA.  *Id.* at 816-817.

Since Judge Crone's ruling on the partial dismissal in 2020, the Fifth Circuit has directly addressed the issue of preemption of state law claims by the FLSA.  In *Aldridge*, the court stated that as a matter of "first impression in our circuit, *viz.*, does the Fair Labor Standards Act preempt redundant state law tort claims for unpaid minimum wages and overtime compensation when the state's law does not provide for minimum wages and overtime compensation? We join the Fourth Circuit in answering 'yes,' and therefore affirm."  *Aldridge v. Mississippi Dep't of Corr.*, 990 F.3d 868, 871 (5th Cir. 2021) (citing *Anderson v. Sara Lee Corp,* 508 F.3d 181 (4th Cir. 2007)).  The court held that "the FLSA preempts redundant state law claims for nonpayment of minimum wages and overtime compensation by way of conflict preemption."  *Id.* at 875–76.  The court noted that "employees may bring a state law cause of action for unpaid minimum wages and overtime-compensation, if the law in their state allows for that, or a cause of action under the FLSA, but not both."  *Id.*  It further explained that "[w]hen the FLSA provides a remedial measure, it conflicts with similar state law causes of action and thus preempts them; when the FLSA does not provide a remedial measure, there is no preemption."  *Id.*  The court did not address preemption with regard to "overtime gap time" claims.

Recently, however, the Fourth Circuit[3] expressly considered the issue of "pure gap time" versus "overtime gap time" claims.  *Conner v. Cleveland Cnty., North Carolina*, 22 F.4th 412 (4th Cir. 2022).  The plaintiff, Conner, alleged that her employer violated the overtime provisions of the FLSA by underpaying straight time wages, and an employer cannot classify wages as overtime without first paying all straight time wages due to an employee.  *Id.* at 418.  The court defined "pure gap time" claims as those where the employee seeks to recover for

---

[3] The Fifth Circuit in *Aldridge* expressly adopted the Fourth Circuit's position as to preemption.  Thus, the court finds its position persuasive on this sub-issue.

unpaid straight time in a week in which they worked no overtime, and "overtime gap time" claims as those in which the employee seeks to recover unpaid straight time for a week in which they did work overtime.  *Id.* at 421.  The Fourth Circuit noted that "courts may be united in rejecting pure gap time claims under the FLSA but they are divided[4] on whether an employee can bring an overtime gap time claim for unpaid straight time worked in an overtime week."  *Id.* Ultimately, the court held that "overtime gap time" claims are cognizable under the FLSA overtime provision and therefore preempted.  *Id.* at 426.  Using the guidance of 29 C.F.R. § 778.315 (promulgated by the Department of Labor), titled "Payment for all hours worked in overtime workweek is required," the court explained that an employee cannot be said to have been paid extra compensation for the excess hours of overtime work under the Act unless all of the straight time compensation owed to him for non-overtime hours has been paid.  *Id.* at 422. The court found that this interpretation and holding furthers the policy objective of the FLSA overtime provision by preventing employers from inventing creative payment schemes to shirk their responsibilities under the Act.  *Id.* at 422-423. While courts[5] in the Fifth Circuit disagree on this matter, the undersigned finds this opinion well-reasoned and persuasive.

Consequently, the only quantum meruit claims that Plaintiffs may assert in this case are "pure gap time" claims that are not preempted by the FLSA.  Further, all FLSA overtime claims, including "overtime gap time" claims, that were not brought within the statute of limitations

---

[4] The Third Circuit follows the reasoning of *Conner*, but the Second Circuit does not.  *See Davis v. Abington Mem'l Hosp.*, 765 F.3d 236, 244 (3d Cir. 2014); *Lundy v. Catholic Health Sys. of Long Island Inc.*, 711 F.3d 106, 115–16 (2d Cir. 2013).

[5] Within the Fifth Circuit, district courts have disagreed over whether to recognize "overtime gap time" claims. *Compare Valcho v. Dallas Cnty. Hosp. Dist.*, 658 F. Supp. 2d 802, 811 (N.D. Tex. 2009) ("As is suggested in the definition of 'gap time' claims, courts generally recognize claims for unpaid straight-time pay when the employee has worked overtime qualifying hours during that pay period."), *Newsom v. Carolina Logistics Servs., Inc.*, No. 2:11CV172–DCB–JMV, 2012 WL 3886127, at *1 (N.D. Miss. Sept. 6, 2012), and *Green v. Dallas Cnty. Schs.*, No. 3:04CV891P, 2005 WL 1630032, at *3 (N.D. Tex. July 6, 2005) *with Carman v. Meritage Homes Corp.*, 37 F. Supp. 3d 860, 866 (S.D. Tex. 2014) ("This Court respectfully disagrees with our sister courts in the Fifth Circuit, and now holds that so long as section 206 is not violated, an employee may not recover for straight time claims under the FLSA. This is so even when the employee has worked overtime.").

period of the FLSA are also preempted and cannot be asserted as quantum meruit state law claims. *Baricuatro v. Indus. Pers. & Mgmt. Services, Inc.*, No. CIV.A. 11-2777, 2013 WL 6072702, at *15 (E.D. La. Nov. 18, 2013) ("To allow the plaintiffs to circumvent the statutory consent (opt-in) requirement solely on the basis that class members' overtime and/or minimum wage claims are time-barred under the FLSA would be indeed repugnant to the FLSA."); *Griffin v. Aldi, Inc.*, No. 516CV00354LEKATB, 2016 WL 7235787, at *4 (N.D. N.Y. Dec. 14, 2016) ("Thus, if a plaintiff can use an unjust enrichment claim to recover against her employer for failure to pay overtime compensation, the statute of limitations to which her claim is subject may be longer than that imposed by the FLSA, thereby frustrating the remedial scheme laid out by that statute.").

### B. Legal Standard for Class Actions

"Rule 23(a) requires the plaintiff to show that the class is too numerous to allow simple joinder; there are common questions of law or fact; the claims or defenses of the class representatives are typical of those of the class; and the class representatives will adequately protect the interests of the class." *Patterson v. Mobil Oil Corp.*, 241 F.3d 417, 418 (5th Cir. 2001) (citing FED. R. CIV. P. 23(a); *Coca–Cola Bottling Co., Etc. v. Coca–Cola Co.*, 95 F.R.D. 168, 170 (1982) (burden of proving action appropriate for class certification is on party seeking to represent class). These requirements are commonly known as "numerosity, commonality, typicality and representativeness." *Durrett v. John Deere Co.*, 150 F.R.D. 555, 557 (N.D. Tex. 1993).

In addition, a proposed class must fit one of the class types enumerated in Rule 23(b). *See* FED. R. CIV. P. 23(b). Plaintiffs have elected subsection (b)(3) of Rule 23 for their proposed class action because they are seeking monetary damages. Rule 23(b)(3) requires that "questions of law or fact common to members of the class predominate over any questions affecting only

7

individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." *Id.* A court must consider the following factors for subsection (3):

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
> (D) the likely difficulties in managing a class action.

*Id.* As the party seeking class certification, plaintiffs bear the burden of establishing that the requirements set forth in Rule 23 have been satisfied. *See, e.g., Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 614 (1997); *Gene & Gene LLC v. BioPay LLC*, 541 F.3d 318, 325 (5th Cir. 2008). A district court has wide discretion in deciding whether or not to certify a proposed class. *Jenkins v. Raymark Indus., Inc.*, 782 F.2d 468, 471 (5th Cir. 1986).

Further, Rule 23 carries with it an implied prerequisite that the class be adequately defined and clearly ascertainable. *John v. Nat'l Sec. Fire & Cas. Co.*, 501 F.3d 443, 445 & n.3 (5th Cir. 2007) (citing *DeBremaecker v. Short*, 433 F.2d 733, 734 (5th Cir. 1970)).

In analyzing class action criteria, courts often have to inquire into the merits of the case and look beyond just the pleadings because the determination necessarily involves the factual and legal issues of the case. *Goldman Sachs Grp. v. Ark. Tchr. Ret. Sys.*, 141 S. Ct. 1951, 1960–61 (2021); *Chavez v. Plan Benefit Servs.*, 957 F.3d 542, 546 (5th Cir. 2020).

  *C. Analysis*

  1. <u>Adequacy of the Class Definition and Ascertainability of the Class</u>

Rule 23 class actions are "opt out" proceedings, meaning that each person within the class is bound by the judgment, unless he or she affirmatively opts out of the suit. *See* FED. R. CIV. P. 23(c)(2)(B)(v) (explaining that "the court will exclude from the class any member who

requests exclusion").  In contrast, under section 16(b) of the FLSA, in order to become a party plaintiff, each person must affirmatively "opt in" to the collective action by providing a written, filed consent.  *Sandoz v. Cingular Wireless,* LLC, 553 F.3d 913, 916 (5th Cir. 2009).  "This difference means that every plaintiff who opts in to a collective action has party status, whereas unnamed class members in Rule 23 class actions do not. Consequently, although the original plaintiffs in a collective action may pursue the suit on a representative basis, each FLSA claimant has the right to be present in court to advance his or her own claim."  *McKnight v. D. Houston, Inc.*, 756 F. Supp. 2d 794, 808 (S.D. Tex. 2010).  "The class action is an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only."  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348 (2011).

Thus, "in order to maintain a class action, the class sought to be represented must be adequately defined and clearly ascertainable."  *Union Asset Mgmt. Holding A.G. v. Dell, Inc.*, 669 F.3d 632, 639 (5th Cir. 2012).  This is critical in a class action because everyone that meets the class definition will automatically and necessarily be a part of the class without taking any action.  "A precise class definition is necessary to identify properly those entitled to relief, those bound by the judgment, and those entitled to notice."  *In re Monumental Life Ins. Co.*, 365 F.3d 408, 413 (5th Cir. 2004).  The definition must be based upon objective criteria that establishes membership with definite boundaries.  *Burns v. Chesapeake Energy, Inc.,* No. 5:15-CV-01016-RCL, 2018 WL 4691616, at *4 (W.D. Tex. Sept. 28, 2018).

The Plaintiffs proposed class definition is:

All current and former hourly, non-exempt registered RNs and Psych Techs employed by Defendants at the Facility at any time during the Class Period.

(Doc. #105, at 1.)  As pointed out by the Defendants, this class definition is overly broad with no description of the type of claim or injury.  *See Earl v. Boeing Co.*, 339 F.R.D. 391, 413 (E.D. Tex. 2021) ("If a class definition is so broad that it sweeps within it persons who could not have

been injured by the defendant's conduct, then it is too broad."). Even if the court were to refine this class definition to only include those RNs and psych techs "who failed to receive compensation (for straight time a.k.a. gap time) from Defendants for all hours worked in weeks for which overtime cannot be claimed," the court would still have no way of ascertaining these individuals.

"Although class members need not be ascertained prior to certification, it must be evident at the certification stage that they will be ascertainable at some point in the case." *Sadler v. Int'l Paper Co.*, No. 09-CV-1254, 2011 WL 3502467, at *4 (W.D. La. July 13, 2011), *R. & R. adopted*, 2011 WL 3510891 (W.D. La. Aug. 10, 2011). The hallmark of ascertainability is whether the class is "sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member." *Earl v. Boeing Co.*, 339 F.R.D. at 422 (citing *Brecher v. Republic of Argentina*, 806 F.3d 22, 24 (2d Cir. 2015)). "Class definitions must be free of merits allegations that require extensive factual findings." *Chiang v. Veneman*, 385 F.3d 256, 271 (3d Cir. 2004), *abrog. on other grounds, In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 318 (3d Cir. 2008), *as amended* (Jan. 16, 2009); *see also* 5 James Wm. Moore et al., MOORE'S FEDERAL PRACTICE ¶ 23.21[3][c] (3d ed. 1999) ("A class definition is inadequate if a court must make a determination of the merits of the individual claims to determine whether a particular person is a member of the class."). In addition, several courts have held that where nothing in company databases shows or could show whether individuals should be included in the proposed class, the class definition fails. *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 593 (3d Cir. 2012) (citing *Clavell v. Midland Funding LLC*, No. 10–3593, 2011 WL 2462046, at *4 (E.D. Pa. June 21, 2011); *Sadler v. Midland Credit Mgmt., Inc.*, No. 06–C–5045, 2008 WL 2692274, at *5 (N.D. Ill. July 3, 2008); *In re Wal–Mart Stores, Inc. Wage*

*& Hour Litig.*, No. C 06–2069 SBA, 2008 WL 413749, at *8 (N.D. Cal. Feb. 13, 2008*); Deitz v. Comcast Corp.*, No. C 06–06352 WHA, 2007 WL 2015440, at *8 (N.D. Cal. July 11, 2007)).

In this case, Defendants' records may indicate every nurse and psyh tech that worked for them during the relevant time period but that is not the actual class Plaintiffs seek. Plaintiffs are seeking a class action based upon non-preempted quantum meruit claims. Defendants' records will not reveal these certain individuals. If a nurse or psych tech worked through lunch, was interrupted during lunch, or performed other off-the-clock work and did not claim those hours through a correction sheet or by clicking the button in the Kronos time keeping system indicating they did such, there is no record of their uncompensated "gap time." This is subjective criteria that can only be asserted by the individual. Plaintiffs are not alleging that these employees worked the time and claimed it but were not paid for it. Instead, they claim they were intimidated and/or encouraged not to report this time. If that is assumed to be true, certainly those employees should be compensated for their uncompensated time, but an opt-out class action is not the method for doing so. The undersigned finds that the proposed class is not clearly defined and is not ascertainable. However, even if the court were to find this an ascertainable class, the proposed class also fails as to numerosity, predominance and superiority as discussed below.

## 2. Numerosity

Under Rule 23(a)(1), a class may be certified only when it is "so numerous that joinder of all members is impracticable." FED. R. CIV. P. 23(a)(1). For this reason, "courts must not focus on sheer numbers alone." *Pederson v. La. State Univ.*, 213 F.3d 858, 868 n.11 (5th Cir. 2000). Courts should also consider the "geographical dispersion of the class, the ease with which class members may be identified, the nature of the action, and the size of each plaintiff's claim." *Ibe v.*

*Jones*, 836 F.3d 516, 528 (5th Cir. 2016) (quoting *Zeidman v. J. Ray McDermott & Co., Inc.*, 651 F.2d 1030, 1038 (5th Cir. 1981)).

Here, Plaintiffs claim that there are approximately 244 to 350 non-exempt RNs and psych techs at the Defendants' facility during the relevant four-year limitations period for quantum meruit claims.  (Doc. #105, at 17, 20; Doc. #114, at 10.)  However, under Plaintiffs' proposed class definition, this would include all RNs and Psych Techs—not just those claiming unpaid "gap time."  Defendants point to evidence showing that at least three individuals (Moncrief, Jones, and Fisk) that meet this definition assert that they never worked during meal breaks without pay.  (Doc. #119, at 4.)  Defendants also assert that "101 different RNs and Psych Techs at the Facility since the implementation of Kronos in July 2018 have been paid for 478 missed meals [sp] breaks."  (*Id.* at 11 n.15.)  As such, it is unclear how many class members there would be for the proposed quantum meruit claims.  *See Zeidman v. J. Ray McDermott & Co., Inc.,* 651 F.2d at 1040 ("Where an admittedly large and potentially dominant group is excluded from a plaintiff's purported class, it is obviously difficult to estimate the numerosity of the plaintiff's class absent some evidence of the size either of the excluded group or of the remaining class.").

Likewise, in *Burns v. Chesapeake, Inc.*, the court considered a class certification for straight time wage claims under Texas law and declined to certify on numerosity.  2018 WL 4691616, at *4.  The court stated that the plaintiffs did not provide evidence of which potential class members listed had experienced wage theft and thus would fall within the proposed class definition.  *Id.*  The court noted that the evidence identified employees who worked in positions similar to those of plaintiffs but did not identify the number of employees who failed to receive payment for completed work.  *Id.*  The court held that a declaration by the named plaintiff that he had personal knowledge that many similarly situated workers also experienced wage theft was not evidence of a "reasonable estimate" of the number of potential class members.  *Id.* at *5.  We

have the same situation here.  In Plaintiffs' declarations, they both allege that there are many other nurses and psych techs who would be interested in making claims to recover unpaid wages, but that is not evidence of a reasonable estimate.  (Doc. #105-2, Ex. G, H.)  In addition, Defendants point out that the Plaintiffs' depositions indicate that they have no knowledge of the number of other nurses or psych techs that failed to receive compensation for off-the-clock work or missed meal breaks.  (Doc. #108, at 1 n2.)

Moreover, the undersigned cannot conclude that joinder would be impracticable in this case.  The potential class members in this case are confined to those who worked for Defendants' facility in Beaumont, Texas, so the majority of them live in the geographic area of southeast Texas and are not geographically dispersed.  Also, Defendants have provided contact information to the Plaintiffs for all RNs and psych techs who *possibly* have wage claims.  Furthermore, the court has granted a collective action in this case, so the FLSA notice and consent procedures will significantly aid Plaintiffs in seeking joinder of all possibly aggrieved putative class members.  *See Bridges v. Absolute Lawn Care LA, LLC*, No. CV 16-448, 2016 WL 6440326, at *12–13 (E.D. La. Nov. 1, 2016) (declining certification due to possible joinder of plaintiffs who live nearby and availability of information to plaintiffs through FLSA collective action).  Thus, Plaintiffs have failed to meet their burden as to numerosity.

### 3.  Rule 23(b)(3) – Predominance and Management

As stated above, Rule 23(b)(3) looks to whether there are common questions of law or fact that predominate over questions affecting only individual members, and that the class action is superior to other available methods.  Considerations for this inquiry include: (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims

in the particular forum; and (D) the likely difficulties in managing a class action.  FED. R. CIV. P. 23(b)(3).  "An individual question is one where members of a proposed class will need to present evidence that varies from member to member, while a common question is one where the same evidence will suffice for each member to make a prima facie showing [or] the issue is susceptible to generalized, class-wide proof."  *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016).

For example, in *Boelk v. AT & T Teleholdings, Inc.*, the court evaluated a meal break violation case for class certification and found that under the circumstances, the case was unmanageable as a class action due to the numerous highly fact-specific inquires as to why an employee worked during all or part of his meal break on a particular day.  No. 12-CV-40-BBC, 2013 WL 261265, at *13 (W.D. Wis. Jan. 10, 2013) (citing *Kenny v. Supercuts, Inc.*, 252 F.R.D. 641, 646 (N.D. Cal. 2008) (denying class certification because individual issues would predominate as court would need to determine why each class member did not clock out for meal break on any particular day); *Salazar v. Avis Budget Group, Inc.*, 251 F.R.D. 529, 534 (S.D. Cal. 2008) (denying class certification because individual issues would predominate in determining whether defendants forced plaintiffs to forgo missed meal periods)).

Ultimately, the Rule 23(b)(3) predominance inquiry tests whether the proposed class is sufficiently "cohesive" to warrant adjudication by class representation.  *Amchem Products, Inc. v. Windsor*, 521 U.S. at 623; *Crutchfield v. Sewerage & Water Bd. of New Orleans*, 829 F.3d 370, 376 (5th Cir. 2016).  In their brief, Plaintiffs cite to four different cases outside this circuit as examples of cases that were certified as a class action under Rule 23 based upon unjust enrichment claims in a wage and hour context.  *See Verma v. 3001 Castor, Inc.*, No. 13-3034, 2016 WL 6962522 (E.D. Penn. Nov. 29, 2016), *aff'd*, 937 F.3d 221 (3rd Cir. 2019); *Herzfeld v. 1416 Chancellor, Inc.*, No. 14-4966, 2017 U.S. Dist. LEXIS 88732 at *29-30 (E.D. Penn. June 9, 2017); *Martins v. 3PD Inc.,* No. 11-11313-DPW, 2014 U.S. Dist. LEXIS 40638 at *41 (D. Mass.

Mar. 27, 2014); *Doe v. Banc, Jack & Joe LLC*, No. 17-cv-03843, 2020 U.S. Dist. LEXIS 95129, at *23 n.5 (D. N.J. June 1, 2020).  Three of these cases (*Verma*, *Herzfeld*, and *Doe*) were also granted a collective action pursuant to the FLSA.[6]  These cases, however, illustrate the differences in facts between them and the case presented here.  In *Verma*, *Herzfeld*, and *Doe*, the classes were comprised of exotic dancers seeking recovery of tips that were alleged to be inequitably retained by their employer.  The tip out policy was the same for every single dancer, and every single dancer had tips deducted from them.  Therefore, there was a "cohesive" class where the claims could be resolved on a classwide, representative basis.

Notably, in *Verma*, the court certified a class action as to tip claims but denied class certification as to claims regarding deduction of stage fees, fines, and room rental fees, because these claims were not factually consistent among the class members thereby allowing the individual facts to predominate over the common ones.  *Verma*, 2016 WL 6962522, at 10-12.  The court held that the factual questions were far more individualized for these fees, including certain shifts that were not charged a fee; the fines were based upon individual conduct; and the private dance fees would depend upon how many private dances were performed during a shift and how long the dance lasted.  *Id.*  The court also expressed concerns regarding the lack of a common methodology for calculating damages.  *Id.*

Likewise, in this case, the individual facts as to meal break claims and off-the-clock work will predominate over the common ones defeating the cohesion needed for an *opt-out* class action.  The Defendants note that some individuals in the putative class claim to have missed no

---

[6] The court notes that while the Fifth Circuit has not stated a position as to hybrid cases involving a simultaneous FLSA collective action and Rule 23 class action, the trend among the circuit courts is that they are allowed if the case meets both requirements.  *See Esquivel v. Downhole Tech., LLC,* No. 4:21-CV-00181, 2022 WL 2359276, at *4 (S.D. Tex. June 30, 2022) (collecting cases from the Second, Seventh, Ninth, Eleventh, and District of Columbia Circuits), *R. & R. adopted*, 2022 WL 2757580 (S.D. Tex. July 14, 2022).  The court notes, however, that all of these circuit court cases involved a collective action under the FLSA along with a class action asserting state law claims under a state statutory wage act that mirrored the FLSA, as opposed to an equitable common law claim.

meal breaks without pay and have never worked off-the-clock, while others have missed some meal breaks but not all of them, etc.

In addition, the court has concerns regarding whether Plaintiffs have shown the superiority requirement, which requires a showing that "a class action is superior to other available methods for the fair and efficient adjudication of the controversy." FED. R. CIV. P. 23(b)(3). At this point in the litigation (with a collective action proceeding), a class action would greatly complicate this case, create prejudicial delay, increase costs, and would exhaust a substantial amount of the remaining time for pretrial proceedings. Consequently, the undersigned finds that Plaintiffs have also failed to meet their burden pursuant to Rule 23(b)(3).

## III. RECOMMENDATION

For the reasons discussed herein, the undersigned recommends denying Plaintiffs' Motion for Class Certification (doc. #105) for failing to meet their burden regarding the factors of an adequate class definition, ascertainability, numerosity, predominance, and superiority. As such, the court need not address the parties' contentions regarding the remaining factors. *See In re Canon Cameras*, 237 F.R.D. 357, 359 (S.D. N.Y. 2006) ("Here, while the Court harbors doubt that plaintiffs have satisfied all the requirements of Rule 23(a), it need not reach that question because it is plain that they do not begin to satisfy the requirements of Rule 23(b)."); *Boelk*, 2013 WL 261265, at *12 ("Because I conclude that plaintiffs cannot satisfy the commonality requirement of Rule 23(a), I need not address the remaining factors of Rule 23(a) or whether plaintiffs may maintain a class under Rule 23(b).").

## IV. OBJECTIONS

Pursuant to 28 U.S.C. § 636(b)(1)(c), each party to this action has the right to file objections to this report and recommendation. Objections to this report must: (1) be in writing, (2) specifically identify those findings or recommendations to which the party objects, (3) be no

longer than eight (8) pages, and (4) be served and filed within fourteen (14) days after being served with a copy of this report.  28 U.S.C. § 636(b)(1)(c) (2009); Fed. R. Civ. P. 72(b)(2); E.D. Tex. Local R. CV-72(c).   A party who objects to this report is entitled to a *de novo* determination by the United States district judge of those proposed findings and recommendations to which a specific objection is timely made.  28 U.S.C. § 636(b)(1) (2009); Fed R. Civ. P. 72(b)(3).

A party's failure to file specific, written objections to the proposed findings of fact and conclusions of law contained in this report, within fourteen (14) days of being served with a copy of this report, bars that party from: (1) entitlement to de novo review by the United States district judge of the findings of fact and conclusions of law, *see Rodriguez v. Bowen*, 857 F.2d 275, 276–77 (5th Cir. 1988), and (2) appellate review, except on grounds of plain error, of any such findings of fact and conclusions of law accepted by the United States district judge, *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, at 1428–29 (5th Cir. 1996) (en banc).

**SIGNED this the 18th day of October, 2022.**

Christine L Stetson
UNITED STATES MAGISTRATE JUDGE

17